USCA1 Opinion

 

 March 3, 1993 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-1865 UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA (UE)., ET AL., Plaintiffs, Appellants, v. 163 PLEASANT STREET CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ Stahl, Circuit Judge. _____________ ____________________ Mark D. Stern with whom Brian W. Mellor, Mary Leary, and Edward ______________ _______________ ___________ ______ J. Dailey were on brief for appellants. _________ David D. Cole on brief for Barney Frank, Gerry E. Studds, Chester ______________ G. Atkins, Joseph D. Early, Joseph P. Kennedy, II, Edward J. Markey, Nicholas Mavroules, John Joseph Moakley, Richard E. Neal, John W. Oliver, and Senators Edward M. Kennedy and John F. Kerry, amici curiae. Charles L. Janes with whom James C. Stokes and Bingham, Dana & _________________ ________________ _______________ Gould were on brief for appellees. _____ ____________________ March 3, 1993 ____________________ STAHL, Circuit Judge. This appeal requires us to ______________ decide for a second time1 whether plaintiffs-appellants ("plaintiffs") have sufficiently demonstrated that the district court has personal jurisdiction over the primary defendants-appellees ("defendants") to this action to pursue their claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. 1001-1461 (West 1985 & Supp. 1992), the Labor-Management Relations Act ("LMRA"), 29 U.S.C.A. 141-187 (West 1973 & Supp. 1992), and Massachusetts common law. Finding that plaintiffs' showing at this stage of the litigation is adequate to meet the relevant legal standard, we vacate the district court's order of dismissal and remand this action for further proceedings. I. I. __ PROCEDURAL BACKGROUND PROCEDURAL BACKGROUND _____________________ We begin our analysis with a recounting of the already eventful procedural history of this litigation. Plaintiffs are the United Electrical, Radio and Machine Workers of America ("the Union") and certain retired or disabled employees of the defendant corporations or one of these corporations' predecessor-in-interest.2 On July 19, ____________________ 1. See generally United Elec., Radio and Mach. Workers of ___ _________ __________________________________________ America v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir. _______ _________________________ 1992) (hereinafter referred to as "163 Pleasant Street I"). _____________________ 2. One plaintiff is the surviving spouse of a deceased retired employee of the defendant corporations. -2- 2 1991, plaintiffs initiated these proceedings by suing defendants International Twist Drill (Holdings), Ltd. ("ITDH"), 163 Pleasant Street Corporation ("PSC"), a Massachusetts subsidiary of ITDH,3 and Blue Cross/Blue Shield of Massachusetts ("BCBS"). At issue was whether defendants were contractually bound to provide plaintiffs with medical and life insurance.4 In their complaint, plaintiffs sought both damages and equitable relief. As part of the equitable relief sought, plaintiffs requested that the district court enter a preliminary injunction directing defendants to continue paying plaintiffs' insurance premiums pendente lite. ________ ____ On July 24, 1991, the district court, after hearing oral argument, granted plaintiffs' request for a temporary restraining order preserving the status quo until a hearing on plaintiffs' request for a preliminary injunction could be arranged. On August 13, 1991, the district court heard oral ____________________ 3. Prior to 1991, PSC was known as Morse Tool, Inc. Because this fact is not relevant to this appeal, and in order to identify the parties in a consistent fashion, we refer to the company as PSC even when describing events that occurred while the company was still Morse Tool, Inc. 4. Specifically, plaintiffs alleged that they were either signatories to or beneficiaries of agreements, including a collective bargaining agreement between PSC and the Union, under which PSC contracted to provide them with the aforementioned insurance "for life." They further contended that, for a variety of reasons, ITDH, which owned and controlled the now defunct PSC, was liable for these contractual obligations despite the fact that its name did not appear upon these agreements. -3- 3 argument on plaintiffs' request for a preliminary injunction and on a motion to dismiss for lack of personal jurisdiction filed by ITDH on August 6. That same day, the district court granted plaintiffs' request for a preliminary injunction5 and denied ITDH's motion. On August 22, 1991, PSC filed for bankruptcy without paying the disputed premiums. After ITDH also refused to pay the premiums, the district court issued an order holding ITDH in contempt. Subsequently, ITDH appealed the preliminary injunction and the contempt orders. During the pendency of ITDH's appeals, however, discovery was proceeding in the underlying case. As a result of information obtained in the course of this discovery, plaintiffs moved to amend their complaint in order to join International Twist Drill ("ITD") as a defendant and to include additional (at least insofar as ITDH is concerned) allegations against the ITD companies.6 Plaintiffs' motion was allowed on January 23, 1992. Meanwhile, each side continued to supplement the record by filing with the district court further documentation in the form of ____________________ 5. Specifically, the district court ordered that "[PSC], initially, and [ITDH], secondarily, . . . make whatever payments are necessary to continue the medical insurance coverage of these plaintiffs until final judgment is entered in this case." 6. ITD, a subsidiary of ITDH, was not a party when ITDH took its appeal of the preliminary injunction and contempt orders. Therefore, all uses of the acronym "ITD" made in 163 Pleasant ____________ Street I should be construed as being references to ITDH. ________ -4- 4 affidavits and otherwise. Because of the timing of these filings, this material was not part of the record in ITDH's initial appeal. On March 30, 1992, this court handed down 163 ___ Pleasant Street I, which vacated the district court's ____________________ injunction and contempt orders. In so doing, we did not reach the merits of the lower court's decisions. Rather, we found that plaintiffs had not established that the court had personal jurisdiction over ITDH. Accordingly, we directed that the preliminary injunction and contempt orders be vacated and remanded the case "for further proceedings not inconsistent [with our opinion]." Id. at 1099. ___ After publication of 163 Pleasant Street I, ITDH _______________________ and ITD filed a joint motion to dismiss for lack of personal jurisdiction, incorporating by reference our opinion of March 30, 1992. Plaintiffs opposed the motion, relying upon allegations in their recently amended complaint and upon materials not part of the record in 163 Pleasant Street I. ______________________ On May 8, 1992, the district court issued a two-page memorandum and order granting ITDH's and ITD's motion.7 The memorandum and order stated: "[Each] issue and theory upon which plaintiffs' claims rest has been thoroughly analyzed and addressed in the decision of the Court of Appeals. There ____________________ 7. Although entered on May 8, 1992, the memorandum and order was dated May 4, 1992. -5- 5 is nothing to be gained from prolonging this case further." Plaintiffs moved for reconsideration of the district court's order, again directing the court's attention to materials made part of the record after ITDH had taken its initial appeal and other materials filed by plaintiffs on May 8, 1992. By margin order entered June 24, 1992, the district court denied plaintiffs' motion.8 Plaintiffs now appeal the district court's order of dismissal and denial of their motion for reconsideration. II. II. ___ DISCUSSION DISCUSSION __________ Because 163 Pleasant Street I exhaustively __________________________ delineated both the facts underpinning this dispute and the law implicated by its resolution, we do not engage in rehash here. Suffice it to say that the question of whether, at this stage of the litigation, plaintiffs have made a sufficient showing that ITDH and ITD, both Scottish corporations, are subject to the personal jurisdiction of the district court hinges upon whether there is adequate record evidence that the two entities (1) "transact[ed]. . . business in ____________________ 8. Although resolution of plaintiffs' motion by margin order contravened the separate document requirement of Fed. R. Civ. P. 58, see Fiore v. Washington County Community Mental Health ___ _____ _________________________________________ Ctr., 960 F.2d 229, 234-36 (1st Cir. 1992), we deem ____ plaintiffs' appeal, which is timely when viewed against the date the order was entered, to be a waiver of the requirement. See Bankers Trust Co. v. Mallis, 435 U.S. 381, ___ _________________ ______ 387-88 (1978); Fiore, 960 F.2d at 236 n.10. _____ -6- 6 [Massachusetts]," thus subjecting them to the Commonwealth's long-arm statute, see Mass. Gen. Laws Ann. ch. 223A, 3(a) ___ (West 1985 & Supp. 1992), and (2) have acted in such a manner that the district court's exercise of jurisdiction over them would not offend the constitutionally anchored "minimum contacts" rule. See International Shoe Co. v. Washington, ___ ______________________ __________ 326 U.S. 310, 316 (1945).9 ____________________ 9. In 163 Pleasant Street I, though we observed that "the ______________________ lower court's ruling that ITD[H] was `transacting business' in Massachusetts is likely sustainable," see 163 Pleasant ___ ____________ Street I, 960 F.2d at 1087, we did not determine whether ITDH ________ was subject to the Commonwealth's long-arm statute as we found that the minimum contacts rule was not satisfied. In so doing, we began by noting that ITDH's contacts with Massachusetts were "manifestly insufficient to ground a claim of general jurisdiction. . . ." Id. at 1088. Next, we ___ distilled the jurisprudence governing the ascertainment of specific jurisdiction (which, along with general jurisdiction, is one of the two types of personal jurisdiction we have recognized in analyzing minimum contacts) into the following tripartite test: (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities, (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable, and (3) the exercise of jurisdiction must, in light of five specified criteria for evaluating the fairness of subjecting a nonresident to the authority of a foreign tribunal (collectively dubbed the "Gestalt factors"), be reasonable. See id. at 1088-89. ___ ___ In applying the specific jurisdiction test, we first found that, of the forum-related contacts between ITDH and the Commonwealth mentioned by the district court in the August 13, 1991, hearing, only the involvement of John Lindsay, an ITDH principal, in negotiating the collective bargaining agreement at the heart of this litigation could be thought of as giving rise to, or relating to, this cause of action. Id. at 1089. Limiting our inquiry to this contact, ___ we then determined that the evidence surrounding Lindsay's -7- 7 In arguing that the above question should be answered in the affirmative, plaintiffs contend that our analysis in 163 Pleasant Street I has been rendered obsolete ______________________ by additions to the record which occurred while the first appeal was pending. As a result, plaintiffs assert, the district court's uncritical reliance upon our previous opinion was in error.10 We agree with plaintiffs' position. ____________________ involvement was insufficient for us to determine "that ITD[H], through its own affirmative conduct, purposefully availed itself of the privilege of conducting activities in Massachusetts. . . ." Id. at 1090-91. Central to this ___ determination was the lack of record evidence suggesting that the negotiations over the collective bargaining agreement and, a fortiori, Lindsay's participation therein took place _ ________ in Massachusetts. Id. at 1090. Accordingly, we held that ___ the constitutionally required minimum contacts between ITDH and Massachusetts were not present and declined to address the question of reasonableness in light of the Gestalt factors. See id. at 1090 n.11. ___ ___ 10. In response to plaintiffs' argument, defendants do not attempt to demonstrate that the current record is insufficient to support an exercise of personal jurisdiction over them. Rather, defendants essentially argue (1) that ITDH and ITD should not be held liable, through corporate veil piercing, for PSC's contractual obligations, and (2) that the materials submitted to the district court on May 8, 1992, were submitted after the order of dismissal and therefore should not be considered by us in this appeal. Though defendants' first argument ultimately may prove meritorious, it has no bearing on the question raised in the instant appeal. Accordingly, we do not discuss it. Moreover, because, as will be more fully explained infra, we _____ find that the record was sufficient for the court to exercise personal jurisdiction over ITDH and ITD even before the documents submitted on May 8, 1992, were made a part thereof, we need notreach the merits of defendants' second argument. -8- 8 Where, as here, a district court elects to dispose of a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing,11 the "prima facie" standard should govern the court's review. See Boit, 967 F.2d at 675; Kowalski v. ___ ____ ________ Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. ____________________________________ 1986). Under this standard, it is plaintiff's burden to demonstrate the existence of "every fact required to satisfy `both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of the Constitution.'" Boit, 967 F.2d at 675 ____ (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d ___________________ __________________ 9, 11 (1st Cir. 1990)). The prima facie showing must be based upon evidence of specific facts set forth in the record. Boit, 967 F.2d at ____ ____________________ 11. During the course of oral argument at the August 13, 1991, hearing on ITDH's initial Rule 12(b)(2) motion, the district court did make reference to certain affidavits which had been introduced into the record at that time and did allow counsel for ITDH to speak on the issue of personal jurisdiction. (Plaintiffs' counsel did not address the court on this issue because the court found in plaintiffs' favor at the conclusion of ITDH's presentation.) Also, in determining that it had personal jurisdiction over ITDH, the court indicated that it so found by "clear and convincing evidence." Therefore, it appears that the August 13, 1991, hearing was a limited evidentiary hearing. See Boit v. Gar- ___ ____ ____ Tec Products, Inc., 967 F.2d 671, 676 (1st Cir. 1992) ____________________ (evidentiary hearings need not involve evidence taken orally in open court, but may proceed with all evidence being introduced by means of affidavits, authenticated documents, answers to interrogatories or requests for admissions, and depositions, and with findings being made under a preponderance-of-the-evidence-standard). However, it is apparent from the record that no evidentiary hearing was held on the joint motion to dismiss filed by ITDH and ITD. -9- 9 675; Kowalski, 787 F.2d at 9. This means that plaintiff ________ "`must go beyond the pleadings and make affirmative proof.'" Boit, 967 F.2d at 675 (quoting Chlebda v. H.E. Fortna & Bro., ____ _______ ___________________ Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)). However, in ____ determining whether the prima facie demonstration has been made, the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law. See Boit, 967 F.2d at 675; see also Kowalski, 787 F.2d at 9. ___ ____ ___ ____ ________ Therefore, appellate review of such a ruling is nondeferential and plenary. See Boit, 967 F.2d at 675. ___ ____ Leaving aside the material which was filed on May 8, 1992, see supra note 10, we believe that the effect of two ___ _____ additions to the record made by plaintiffs while the first appeal was pending is such that, applying the prima facie standard, the district court should have denied the joint motion to dismiss filed by ITDH and ITD. First, in their amended complaint, plaintiffs had made the following new allegations: 3. . . . [T]he plaintiff retirees were employed at the defendant corporations' plant in New Bedford, Massachusetts, the obligations to provide insurance were incurred in Massachusetts, and the termination of the insurance giving rise to this claim occurred in this District. 14. The defendant [ITDH] of Scotland is incorporated in Great Britain and was doing business as Morse Tool, Inc. in the Commonwealth of Massachusetts prior to -10- 10 and up to the time of the closure of its New Bedford facility in January[] 1990. It is the sole shareholder in the defendant [PSC]. 15. The defendant [ITD] of Scotland is incorporated in Great Britain and was doing business as Morse Tool, Inc. in the Commonwealth of Massachusetts prior to and up to the time of the closure of its New Bedford Facility in January 1990. It is owned and controlled by the defendant ITDH. 17. At all relevant times the defendants constituted an integrated enterprise and/or single employer doing business in the Commonwealth of Massachusetts. 18. At all relevant times the defendants ITDH and/or ITD constituted the alter ego of the defendant [PSC]. 19. At all relevant times the defendants ITDH and/or ITD jointly employed the plaintiffs along with the defendant [PSC]. 20. . . . The most recent collective bargaining agreement between plaintiffs and defendant corporations covers the period from May 1987 through May 1990. . . . [The collective bargaining agreement] was negotiated for the defendants by an agent of the defendant ITD, acting for and on behalf of the defendant ITDH. Moreover, on April 16, 1992, plaintiffs had introduced an affidavit of Dennis Brady, a Union officer and member of the Union negotiating team, which contained the following assertions: 3. All the negotiations between [the Union] and [ITDH and ITD] occurred in New Bedford, Massachusetts. . . . -11- 11 5. Raymond Zemon [sic] was the primary negotiator of the collective bargaining agreement. He acted on behalf of [ITDH and ITD]. . . . 6. During the negotiations Raymond Zemon [sic] would often make telephonic contact from Massachusetts with individuals in Scotland before agreeing to any proposals. . . .12 Simply put, we believe that the combination of the complaint amendments and the Brady affidavit is sufficient to cure the deficiency -- i.e., that ITDH had not purposely availed itself of the privilege of conducting activities in Massachusetts -- on which our holding in 163 Pleasant Street ___________________ I was premised. As noted above, see supra note 9, the only _ ___ _____ record evidence before us in 163 Pleasant Street I which was _____________________ even remotely relevant to the purposeful availment inquiry was the fact that John Lindsay had some "involvement in" the negotiation of the collective bargaining agreement. See 163 ___ ___ Pleasant Street I, 960 F.2d at 1090. The record did not _________________ reveal where Lindsay was located during the period of his involvement Id. Indeed, the record did not even indicate ___ where the negotiations had taken place. Id. ___ ____________________ 12. Further support for the allegation that the collective bargaining agreement between the Union and PSC actually was negotiated by Raymond Zeman acting on behalf of ITDH and ITD can be found in the agreement itself. The first paragraph of the agreement contains the following provision: "This Agreement is contingent upon and will not become effective until [PSC] is purchased by Scottish interests presently represented by Zeman International." The agreement then is signed by Raymond Zeman on behalf of Zeman International. -12- 12 After remand, however, the record before the district court was significantly less enigmatic than that before us in 163 Pleasant Street I. It now contained an _______________________ affirmative allegation that the collective bargaining agreement was negotiated "for the defendants by an agent of ITD, acting for and on behalf of defendant ITDH."13 More significantly, the record also contained "affirmative proof," see Boit, 967 F.2d at 675, tending to support this allegation ___ ____ and plaintiffs' claim that the aforementioned negotiations took place in the Commonwealth of Massachusetts. We think that this is sufficient. If true, plaintiffs' evidence tends to show that, at the time the collective bargaining agreement between PSC and the Union was being negotiated, (1) ITDH and ITD were actively engaged in the process of purchasing PSC, a Massachusetts corporation, (2) ITD, acting on behalf of ITDH, had retained an agent to negotiate the agreement, the efficacy of which was made contingent upon ITDH's and ITD's subsequent purchase of PSC, (3) the negotiations took place in Massachusetts, and (4) the agent often called "individuals in Scotland" from Massachusetts before agreeing to any proposals. In our view, such activity within Massachusetts cannot be viewed as ____________________ 13. As our earlier opinion noted, the contacts of a corporation's agent obviously can subject the corporation to the personal jurisdiction of the forum in which those contacts occur. See id. ___ ___ -13- 13 "random, fortuitous, or attenuated." Cf. Burger King Corp. ___ _________________ v. Rudzewicz, 471 U.S. 462, 475 (1985) ("Th[e] purposeful _________ availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. . . .") (quoting Keeton ______ v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) and _______________________ World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 ____________________________ _______ (1980)) (internal quotation marks omitted). Rather, we believe that it is more accurately characterized as a deliberate engagement in significant activities within Massachusetts, and thus a purposeful availment of the privilege of conducting activities within the Commonwealth, making involuntary presence before a Massachusetts court a reasonably foreseeable event. See Burger King, 471 U.S. at ___ ___________ 474-76. Accordingly, we hold that plaintiffs have met their prima facie burden of demonstrating the existence of sufficient facts to meet the second prong of the tripartite specific jurisdiction test announced in our previous opinion. See 163 Pleasant Street I, 960 F.2d at 1089.14 ___ _____________________ This conclusion does not end our inquiry. As previously noted, see supra note 9, because we found ___ _____ ____________________ 14. Obviously, the evidence that Raymond Zeman negotiated the agreement as an agent of ITD, acting on behalf of ITDH, is also sufficient, under the prima facie standard, to satisfy part one of the tripartite specific jurisdiction test: that the claim underlying the litigation arise out of, or relate to, ITDH's and ITD's forum state activities. See ___ 163 Pleasant Street I, 960 F.2d at 1089. _____________________ -14- 14 insufficient proof of minimum contacts in 163 Pleasant Street ___________________ I, we did not address whether subjecting ITDH to the personal _ jurisdiction of Massachusetts would be reasonable in light of the Gestalt factors. Nor did we formally determine whether ITDH was within the reach of the Massachusetts long-arm statute. Extending our query also to include ITD, we discuss each question in turn. Once a court has determined that a defendant has purposefully established minimum contacts within the forum state, these contacts may be considered in light of certain factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Burger King, 471 U.S. at 476 (quoting _____________ International Shoe, 326 U.S. at 320). These Gestalt factors __________________ include: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. 163 Pleasant Street I, 960 F.2d at 1088 ______________________ (citing Burger King, 471 U.S. at 477). ___________ Application of these five factors to the facts before us easily yields the conclusion that the district court's exercise of personal jurisdiction over ITDH and ITD -15- 15 would meet International Shoe's "fair play and substantial ___________________ justice" requirement. While we do not doubt that traveling to Massachusetts for purposes of defending this action will place a significant burden upon ITDH and ITD, we believe that this burden is substantially outweighed by Massachusetts' interest in adjudicating this dispute and plaintiffs' interest in obtaining convenient and effective relief. Cf. ___ Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114 ______________________ ______________ (1987) ("[O]ften the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed upon [an] alien defendant."). In this era of ever burgeoning health care costs, Massachusetts clearly has a vital interest in seeing bargained-for health insurance benefits provided to its residents. If this case is dismissed, many plaintiffs may be forced to rely upon public funds to help defray health care costs, which fact in turn will place an increased financial burden upon the Commonwealth.15 Moreover, in light of the obvious costs of and obstacles to obtaining insurance elsewhere, the effects upon plaintiffs of losing the benefits at issue in this lawsuit are manifest and can hardly be overstated. ____________________ 15. We note that the cogent and persuasive brief filed on behalf of plaintiffs by the individual members of Massachusetts' congressional delegation as amici curiae _____ ______ speaks volumes about the interest of the Commonwealth in seeing this matter adjudicated before the district court. -16- 16 The fourth Gestalt criterion, the judicial system's interest in obtaining the most effective resolution of the controversy, also favors the retention of jurisdiction over this dispute. If this case is dismissed, it is far from clear that there will be any judicial resolution, let alone the most effective judicial resolution, of this controversy. Even if we assume that this action could be brought in Scotland, the fact remains that all of the individual plaintiffs, many of whom are disabled and/or of advanced years, reside in Massachusetts. Moreover, it is apparent that most of the potential witnesses reside nearer to the seat of the district court than to wherever the case might be tried in Scotland. Given these facts, the logistics of bringing suit in Scotland might prove insurmountable. At any rate, whether or not the significant logistical obstacles could be overcome, it is obvious that efficiency considerations weigh heavily in favor of litigating this case in Massachusetts. The final Gestalt factor, the common interests of all sovereigns in promoting substantive social policies, does not support a contrary conclusion. As an initial matter, we note that defendants have not identified, nor can we discern, any substantive Scottish social policy which might counsel against an exercise of jurisdiction on the facts before us. More importantly, however, while we are mindful of the -17- 17 Supreme Court's admonition that courts should be "unwilling[] to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State[,]" Asahi Metal Industry, 480 U.S. at 115, we are ____________________ confident that plaintiffs' and Massachusetts' interests in litigating this dispute before the district court, far from being minimal, are serious enough to outweigh any such social policy. Therefore, we conclude that the exercise of jurisdiction over ITDH and ITD is reasonable in light of the Gestalt factors. Having determined that, under the prima facie standard, plaintiffs have made a sufficient showing to pass constitutional muster, we need now only formally assert that which we indicated was "likely" before: plaintiffs have also made a prima facie showing that ITDH and ITD are amenable to suit in Massachusetts. Without question, ITDH's and ITD's activities during the negotiation of the collective bargaining agreement, see supra page 13, must, even under the ___ _____ narrowest possible construction of the term, be construed as a "transaction of business" within Massachusetts. Moreover, plaintiffs' cause of action clearly arose from this transaction of business. Thus, ITDH and ITD fall within the reach of the Commonwealth's long-arm statute. See Mass. Gen. ___ Laws. Ann. ch. 223A, 3(a). -18- 18 Before concluding, we elaborate upon why the district court should not have construed 163 Pleasant Street ___________________ I as a mandate to dismiss ITDH and ITD on personal _ jurisdiction grounds.16 We begin by reiterating that, at the August 13, 1991, hearing, the district court's initial personal jurisdiction determination was made at the conclusion of ITDH's oral presentation and without plaintiffs' input. See supra note 11. Therefore, with ___ _____ regard to the question of personal jurisdiction, plaintiffs never had a full opportunity (1) to address the court, either orally or on paper,17 (2) to introduce further evidence, or (3) to request discovery. As a result, the record before us in 163 Pleasant Street I was incomplete. _____________________ Under the facts of this case, the incomplete nature of the record prevented any sort of conclusive determination on the personal jurisdiction issue at the time 163 Pleasant ____________ ____________________ 16. In so stating, we clarify that our comment in 163 ___ Pleasant Street I that "[i]t follows inexorably that ITD[H]'s _________________ motion to quash the complaint for want of personal jurisdiction should have been granted," 163 Pleasant Street ___________________ I, 960 F.2d at 1099, was not intended as a directive to the _ district court, but as an assessment of the record as it __ __ stood when the original motion to dismiss was filed. _____ ____ ___ ________ ______ ___ _______ ___ _____ 17. We note that ITDH first moved to dismiss on personal jurisdiction grounds on August 6, 1991, a mere seven days before the August 13, 1991, hearing. We also note that the fourteen day period for submitting an opposition to ITDH's motion provided for by Rule 7.1(a)(2) of the Local Rules for the United States District Court for the District of Massachusetts had not yet expired when the court denied ITDH's motion. -19- 19 Street I was handed down. The jurisdictional deficiency _________ which informed the holding in our previous opinion did not stem from either a settled factual predicate or legally insufficient allegations, but from perceived voids in the evidentiary landscape. See 163 Pleasant Street I, 960 F.2d ___ ______________________ at 1090. As noted, no discovery directed at filling these voids took place. Accordingly, 163 Pleasant Street I can ______________________ only be interpreted as holding that plaintiffs' jurisdictional showing was insufficient to support the entry of the injunction and contempt orders against ITDH.18 See ___ 7-Pt. 2 James W. Moore et al., Moore's Federal Practice __ ___ 65.03[3], at 65-28 (2d ed. 1989) ("A court must have in personam jurisdiction over the party against whom the ____________________ 18. To reinforce this point, we note that if, on the record before it, the district court had decided the personal jurisdiction issue adversely to plaintiffs without at least _________ affording them the opportunity to respond to ITDH's argument and/or to request discovery, we almost certainly would have declined to affirm the district court's judgment and held the ruling to be an abuse of the court's discretion. Cf. Boit, ___ ____ 967 F.2d at 681 (refusal to defer ruling on Rule 12(b)(2) motion until after there has been discovery on personal jurisdiction issue can be an abuse of discretion); Surpitsky _________ v. Hughes-Keenan Corp., 362 F.2d 254, 255-56 (1st Cir. 1966) ___________________ (district court erred in refusing to allow a diligent plaintiff who was a stranger to a defendant corporation discovery on question of personal jurisdiction); see also 5A ___ ____ Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 1351 at 256-59 (2d ed. 1990) ("In particularly complex cases, . . . it may be desirable to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction. Doing so will enable the parties to employ discovery on the jurisdictional issue, which might lead to a more accurate judgment than one made solely on the basis of affidavits."). -20- 20 injunction runs."); see also 163 Pleasant Street I, 960 F.2d ___ ____ ______________________ at 1084 ("`Given that civil contempt is designed to coerce compliance with the court's decree, it is logical that the contempt order itself should fall with a showing that the court was without authority to enter the underlying decree.'") (quoting Willy v. Coastal Corp., 112 S. Ct. 1076, _____ _____________ 1081 (1992)). In sum, the district court should not have summarily granted ITDH's and ITD's motion to dismiss. Instead, after remand, it should have determined, on the record then before it, whether it had jurisdiction over ITDH and ITD. In so doing, it should have proceeded in accordance with one of the approaches outlined in Boit. See Boit, 967 ____ ___ ____ F.2d at 675-78. III. III. ____ CONCLUSION CONCLUSION __________ Because plaintiffs have made a prima facie demonstration of every fact required to satisfy both Massachusetts' long-arm statute and the Due Process Clause of the United States Constitution, the district court erred in granting the second motion to dismiss filed by ITDH and ITD. Accordingly, we vacate the judgment of the district court and remand this case for further proceedings.19 ____________________ 19. Having found that plaintiffs have made a prima facie showing that the district court had personal jurisdiction over the ITD companies, we need not reach the merits of -21- 21 Vacated and remanded. _____________________ ____________________ plaintiffs' argument that alternative bases for the assertion of jurisdiction over defendants exist in this matter. -22- 22