**Frederick BEARSE, Plaintiff,**

v.

**MAIN STREET INVESTMENTS, f/k/a Regal Investments, an Ohio corporation; Church Extension of the Church of God, f/k/a Board of Church Extension and Home Missions of the Church of God, an Indiana Corporation; General Assembly of the Church of God for the State of Florida, a Florida corporation; John Norman, Defendants.**

No.  Civ.A. 00–11723–RBC [1].

United States District Court,
D. Massachusetts.

Oct. 25, 2001.

**1.**  On February 23, 2001, Judge Wolf issued a Memorandum and Order asking whether the parties would consent to reassignment of this case to the undersigned.  The order stated that consent would be assumed if the parties did not inform Judge Wolf in writing that they did not consent to reassignment.  On March 20, 2001, Plaintiff Frederick Bearse consented in writing to reassignment of the case;  none of the defendants informed Judge Wolf that they would not consent to reassignment, and thus on March 23, 2001, Judge Wolf reassigned this case to the undersigned for all purposes.

Jonathan I. Handler, William Shields, Day, Berry & Howard, Boston, MA, Stephen C. Sadin, Chicago, IL, for Plaintiff.

Christopher F. Robertson, Joseph F. Savage, Testa, Hurwitz & Thibeault, Boston, MA, for Defendants.

### AMENDED [2] MEMORANDUM AND ORDER ON DEFENDANT MAIN STREET INVESTMENTS' MOTION TO DISMISS (# 6) AND DEFENDANT JOHN NORMAN'S MOTION TO DISMISS (# 10)

COLLINGS, Chief United States Magistrate Judge.

### I. Introduction

On August 25, 2000, the plaintiff Frederick Bearse (the "Plaintiff" or "Bearse") filed a four-count complaint, alleging fraud against defendant Main Street Investments f/k/a Regal Investments ("Main Street") and against defendant John Norman ("Norman") and negligent supervision against defendant Church Extension of the Church of God f/k/a Board of the Church Extension and Home Missions of the Church of God (the "Church") and defendant General Assembly of the Church of God for the State of Florida (the "General Assembly"). The basis of the Plaintiff's case is that in 1994, Main Street, through Norman and others, sold mortgage-backed bonds (the "Bonds") to him and that in connection with the sale of the Bonds, the defendants made various fraudulent misrepresentations, resulting in damages to the Plaintiff of $700,000.

In November, 2000, both Main Street and Norman filed Motions to Dismiss, with

---

**2.** This Amended Memorandum and Order supersedes the Memorandum and Order entered October 23, 2001.

accompanying declarations.[3] Main Street asserts that the case against it should be dismissed because: the Plaintiff's claim is barred by the statute of limitations; the Plaintiff failed to satisfy the strict pleading requirements of Fed.R.Civ.P. 9(b); this Court does not have personal jurisdiction over Main Street; and venue is not proper in this district and even if venue is proper in this district, for the purpose of convenience, the Court should transfer this case to the United States District for the Northern District of Georgia or the Middle District of Florida. Similarly, Norman moves that the case against him be dismissed for want of personal jurisdiction and improper venue.

In his Opposition to Main Street's Motion to Dismiss[4] and the accompanying Declaration of Frederick Bearse, filed on January 16, 2001, the Plaintiff counters: that the Complaint was timely filed because Florida's four-year statute of limitations, not Massachusetts' three-year statute, applies to this case; that the Complaint is sufficiently specific to state an actionable claim for fraud; that this Court has personal jurisdiction over the Defendants, as a whole; and that Massachusetts is a "proper and convenient forum." On March 16, 2001, Main Street filed a Reply in Support of its Motion to Dismiss and an accompanying declaration. In its reply brief, Main Street argued again that this Court lacks personal jurisdiction over Main Street, that the Complaint fails to state a satisfactory fraud claim under Rule 9(b) and that even if Florida's four-year statute of limitations applies, the fraud claim is still barred

based on the "discovery rule." The Plaintiff filed no sur-reply.

On May 11, 2001, this Court had a hearing on Main Street's and Norman's motions to dismiss.[5] The Court did not rule on the motions but allowed the Plaintiff to file a pleading on or before June 7, 2001, identifying the specific facts he would seek to discover on the issue of personal jurisdiction over Main Street and Norman (collectively, the "Remaining Defendants") and the form which the discovery would take. (*See* Procedural Order, # 24). Accordingly, on June 7, 2001, the Plaintiff filed a motion for discovery regarding personal jurisdiction. (# 28). That motion requested that the Plaintiff be allowed to serve document requests and interrogatories on the Remaining Defendants in order to investigate further the issue of personal jurisdiction. The Court allowed the Plaintiff's motion, with a few limited exceptions, and ordered that the Plaintiff serve the interrogatories and requests for production by June 20, 2001. The Court also ordered that the Plaintiff file a pleading indicating what, if any, depositions he wished to take on the issue of personal jurisdiction by July 30, 2001.(# 29). On July 30, 2001, the Plaintiff filed a motion for further discovery regarding personal jurisdiction. (# 32). Main Street opposed that motion (# 34) and on August 14, 2001, the Court denied the Plaintiff's motion on the grounds that it was "highly unlikely that the depositions of Main Street and John Norman would yield any further information on the pertinent issue...." (# 35). With the record now complete, the Court can rule on the Remaining Defen-

---

**3.** Upon the Plaintiff's motion, the two other defendants, the Church and the Assembly, have been dismissed out of the case with prejudice. (# 23) Thus, the only remaining counts are Count I (Fraud against Main Street) and Count II (Fraud against Norman).

**4.** The Plaintiff did not file an Opposition to Norman's Motion to Dismiss.

**5.** The Plaintiff's counsel and Main Street's counsel were present at the hearing. Norman, who is *pro se,* did not attend the hearing.

dants' motions to dismiss. For the reasons discussed below, the Court finds that personal jurisdiction does not exist in the District of Massachusetts and that venue is improper here.

## II. The Facts

Since at least 1994, the Plaintiff has lived for six months of the year in South Chatham, Massachusetts and for six months of the year in Lake Mary, Florida. (Declaration of Frederick Bearse # 15, ¶ 4). In February, 1994, the Plaintiff met James Cox ("Cox"), the pastor of Crossings Community Church ("CCC") in Lake Mary, Florida. (# 15, ¶ 6). Cox told the Plaintiff about the plans to erect a building to house CCC, and Cox suggested that the Plaintiff purchase mortgage-backed bonds (the "Bonds") to help finance the building. (# 15, ¶ 7).

Main Street was the broker dealer for the Bonds. (Complaint # 1, ¶ 17). Main Street is an Ohio corporation with its principal place of business in Marietta, Georgia. (# 1, ¶ 2). The offering of the Bonds was made pursuant to a prospectus dated March 1, 1994 which stated that the aggregate amount of the Bonds would be $1,700,000. (# 1, ¶ 18). The prospectus further stated that the real property owned by CCC (the "Property") had sufficient value to support the Bonds. (# 1, ¶ 19).

In February, 1994, Norman, a citizen of Georgia and a registered representative employed by Main Street, came to the Plaintiff's Florida residence at the insistence of Cox, and suggested that the Plaintiff purchase the Bonds. (# 1, ¶¶ 5, 20;

# 15, ¶ 8). During February or March, 1994, Norman told the Plaintiff that the Bonds were a good investment in that they had a high interest rate, that Cox was a good, young pastor who planned to get his Ph.D. and that the Bonds were secure because of the value of the Property. (# 1, ¶ 22). Norman also told the Plaintiff that if he invested $300,000 in the Bonds, he would be repaid within six months because Main Street could easily sell additional bonds to retire the Plaintiff's Bonds. (# 1, ¶ 23). In March, 1994, the Plaintiff purchased the Bonds. (# 15, ¶ 9).

Between May and November, 1994, Cox made numerous calls to the Plaintiff's home in Massachusetts, asking him to purchase additional Bonds. (# 15, ¶ 10). Cox also continued to tell the Plaintiff that the value of the Property was more than the amount of the Bonds and that he would be repaid in a few months. (# 15, ¶ 10). On July 12, 1996, Cox and two other officials associated with the development of CCC traveled to see the Plaintiff in Massachusetts to ask him to invest more money in CCC. (# 15, ¶ 11). The Plaintiff did not invest any additional money in CCC.[6]

The Plaintiff received interest payments on the Bonds until August, 1996. (# 15, ¶ 12). On or about August 29, 1996, the Plaintiff received a letter from Cox stating that CCC could not meet its obligations. (# 1, ¶ 27; # 1, Exhibit B).

## III. Discussion

The Remaining Defendants have moved to dismiss the case on the grounds, *inter alia*, that this Court lacks jurisdiction over them. Because I agree with Main Street

---

**6.** There is no specific statement in the Complaint or in the Declaration of Frederick Bearse to this effect. However, it is not alleged by any party that the Plaintiff made any investment in the Bonds other then his initial investment which is the basis of this lawsuit. Moreover, the Plaintiff never specifies how much he invested in the Bonds, but according to him, he was urged to invest $300,000. I assume that he did indeed invest $300,000. There is no explanation given for why the Plaintiff is seeking $700,000 in damages.

and Norman that this Court lacks *in personam* jurisdiction over them and that venue is improper, I need not address the remaining arguments asserted by them.

"On a motion to dismiss for want of *in personam* jurisdiction, . . . the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 142 F.3d 26, 34 (1st Cir.1998). In making a determination as to whether the Court has jurisdiction over the Remaining Defendants, I apply a prima facie standard which is appropriate when the facts regarding the Defendants' contacts with Massachusetts are essentially undisputed. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 712 (1st Cir.1996), *cert. denied*, 520 U.S. 1155, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997) ("we find no error in the district court's choice of the prima facie standard. A full-blown evidentiary hearing was not necessary in this case because the facts were, in all essential respects, undisputed. In such circumstances, the prima facie standard is both appropriate and preferred."). In conducting my analysis under the prima facie standard, I take "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim . . . and then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Massachusetts School of Law, supra*, 142 F.3d at 34.

■ I apply Massachusetts law to determine whether the court may exercise jurisdiction over the Remaining Defendants. "When jurisdiction is grounded in diversity of citizenship, a federal court applies the law of the forum state to resolve disputes." *Gray v. O'Brien*, 777 F.2d 864, 866 (1 Cir.1985). "Under Massachusetts law, a plaintiff seeking to establish personal jurisdiction has a twofold burden of demonstrating that the Massachusetts Long Arm Statute, G.L. c. 223A, authorizes jurisdiction over the defendant[s], and that any such exercise comports with the constraints imposed by the United States Constitution." [7] *Noonan v. Winston Co.*, 902 F.Supp. 298, 302 (D.Mass.1995). *aff'd*, 135 F.3d 85 (1 Cir.1998); *see also International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (establishing standard for court's exercise of personal jurisdiction).

Determining whether specific jurisdiction exists requires that I implement a three-step test.

"The First Circuit has condensed the principles underlying specific jurisdiction into three analytical components: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the

---

7. There are two types of personal jurisdiction—general and specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity . . . in the forum state." *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). Specific jurisdiction arises when "the cause of action arises directly out of, or relates to, the defendant's forum based contacts." *Noonan*, 902 F.Supp. at 302 (quoting *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994)). The Plaintiff here has made no argument that general jurisdiction exists; thus, I proceed to analyze the personal jurisdiction issue only in terms of whether specific jurisdiction exists over the Remaining Defendants.

benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable."

*Noonan,* 902 F.Supp. at 303 quoting from *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992). Thus, I must first decide whether the Defendants have had sufficient contacts with Massachusetts such that the Long Arm Statute is satisfied. Put another way, does the claim at issue here directly arise out of, or relate to, the Defendants' forum state activities? The Massachusetts Long Arm Statute sets out, that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does business or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

M.G.L. c. 223A, § 3. I will look at the two Remaining Defendants' contacts with Massachusetts separately as it is the Plaintiff's burden to establish that the court has jurisdiction over each and every defendant.

### 1. Defendant Norman

First, taking Norman, the Plaintiff's *only* allegations regarding Norman are that: Norman is a citizen of the state of Georgia (# 1, ¶ 5); in 1994, Norman was a registered representative employed by Main Street (# 1, ¶ 20); in February or March, 1994, Norman was introduced to the Plaintiff (# 1, ¶ 21); in February or March, 1994, Norman came to the Plaintiff's Florida residence and told him that, *inter alia,* the Bonds were a good investment, that the Bonds were secure because of the value of the Property and that he would be repaid within six months if he invested in the Bonds (# 1, ¶ 22, 23; # 15, ¶ 8); Norman's representations were false and he knew they were false (# 1, ¶ 24); Norman continued to represent that Plaintiff's investment was secure and that he would be repaid shortly (# 1, ¶ 25); the misrepresentations by Norman proximately caused the Plaintiff to lose his investment (# 1, ¶ 28); and, Norman currently resides in Georgia. (# 15, ¶ 14).

The Plaintiff has not made one allegation that Norman had any contact with Massachusetts. Moreover, Norman himself swears that he "never sold securities in Massachusetts" (Affidavit of John Norman # 12, ¶ 4); that any discussions he had with the Plaintiff occurred in Florida (# 12, ¶ 6); that he never had any telephone conversations with the Plaintiff while the Plaintiff was in Massachusetts (# 12, ¶ 7); and that he never sent any correspondence to the Plaintiff in Massachusetts nor received any correspondence from the Plaintiff while the Plaintiff was in Massachusetts. (# 12, ¶ 8). Further, Norman avows that he is not a member of any securities exchange. (Norman's Responses to Interrogatories, # 33, Response # 4). As stated above, because Norman's assertions are uncontradicted, I must take them as true for the purposes of determining whether this Court has jurisdiction over him.

In reviewing the four prongs of the Massachusetts Long Arm Statute, I find that not one of those prongs is satisfied *vis-à-vis* Norman. Norman did not transact any

business in Massachusetts; he made no contract to supply goods or services in Massachusetts; and, he did not cause tortious injury by an act or omission in Massachusetts. The only prong of the Long Arm Statute that arguably could apply to Norman is prong (d)—that he caused tortious injury in Massachusetts by an act or omission outside of Massachusetts. However, this prong also requires that a defendant either regularly did business or solicited business in Massachusetts or engaged in a persistent course of conduct in Massachusetts or derived substantial revenue from goods or services used in Massachusetts. There is no evidence or even a single allegation that Norman did business or derived any revenue from goods or services used in Massachusetts. Indeed, as stated above, there is not one allegation that Norman had any contact at all with Massachusetts. It is well-established that "in each case ... there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 251–253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Here, it cannot be said that Norman purposefully availed himself of the privilege of conducting activities within Massachusetts.

■ In sum, Norman had no contact with Massachusetts at all. Thus, the Massachusetts Long Arm Statute is clearly not satisfied with regard to defendant Norman. Because I find that the Massachusetts statute is not satisfied, I need not, and should not, address the constitutional issues regarding personal jurisdiction over Norman. "Where a plaintiff is clearly unable to establish jurisdiction as a matter of state law, it is the better practice to end the inquiry without addressing constitutional concerns." *Noonan,* 902 F.Supp. at 306 n. 12 (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 205 (1st Cir.1994)). In conclusion, I find that this Court cannot exercise *in personam* jurisdiction over defendant Norman.

### 2. Defendant Main Street

■ As with Norman, I must decide first whether the Massachusetts Long Arm Statute is satisfied *vis-à-vis* defendant Main Street. Interestingly, the Plaintiff makes no allegations that Main Street had any contact with Massachusetts. With regard to Massachusetts, he asserts only that he is a resident of Massachusetts (# 1, ¶ 1) and that Cox made numerous calls to him while the Plaintiff was in Massachusetts and that Cox and "two other officials associated with the development of the Church" traveled to see him in Massachusetts. (# 15, ¶¶ 10, 11).[8] Main Street, on the other hand, goes into great detail in explaining that it has never had any meaningful contact with Massachusetts. In the Declarations of Jayme Sickert (# 8) and James C. Burchett (# 9)[9], Main Street establishes, *inter alia,* that

---

8. I do not give any credibility to the Plaintiff's statement that Main Street "sold securities to Bearse in the District of Massachusetts." (# 1, ¶ 8). It is clear from the Plaintiff's Declaration and his other papers filed in this case that the actual sale of the Bonds to the Plaintiff occurred in Florida. The Plaintiff states that he "does not contest that the Bonds were sold in Florida." (# 14 at p. 10). Moreover, the fact that the Plaintiff's son, a potential witness in this case, resides in Massachusetts

(# 15, ¶ 15) has no bearing on the personal jurisdiction issue.

9. Main Street submits two nearly identical declarations, one for Main Street and one for Regal Investments, because Main Street was previously known as Regal Investments. For purposes of this Opinion, I refer only to Main Street, the current entity, but the facts regarding personal jurisdiction over Main Street apply equally to Regal Investments.

Main Street is not licensed to do business in Massachusetts, does not advertise here, has never signed any contracts to provide services here, has no bank accounts here and that no agent of Main Street has ever traveled to Massachusetts in his or her capacity as an agent for Main Street. Main Street's responses to the Plaintiff's interrogatories and document requests serve only to lend further support to Main Street's assertion that it has had no contact with Massachusetts. For example, Main Street states that: the only offices it has ever occupied were in Georgia (not in Massachusetts) (# 32, Ex. D, Response # 3); it is licensed as a broker dealer in 33 states, but not in Massachusetts (*Id.* at Response # 4); no telephone records exist showing incoming or outgoing calls to or from Massachusetts regarding solicitation of bonds of the type purchased by the Plaintiff (# 32, Ex. E, Response # 1); and, no correspondence exists sent by Main Street to anyone residing in Massachusetts from January 1, 1994 through June 30, 1994. (*Id.* at Response # 4).[10]

As the Plaintiff has failed to make any allegations that Main Street had any contact with Massachusetts, it appears that the only issue I must decide is whether Cox is an agent of Main Street. If Cox were an agent of Main Street, then this Court might be able to exercise jurisdiction over Main Street because Cox had numerous case-related contacts with Massachusetts. However, I find that the Plaintiff has not sufficiently established

that Cox was an agent of Main Street. The Plaintiff alleges only that Cox was a pastor of the Church (# 15, ¶ 6), was a pastor with the General Assembly (# 1, ¶ 98) and that the Church and the General Assembly directed Cox to go to Florida to plant churches. (# 1, ¶¶ 72, 99).[11] Conversely, Main Street explicitly states that "no employee, agent, or representative of Main Street ever traveled to Massachusetts in his or her capacity as an employee, agent or representative of Main Street." (# 9, ¶ 8). From this statement, it can be directly inferred that Cox, who did travel to Massachusetts, could not have been an agent of Main Street. I find therefore that the Plaintiff has failed to meet his burden of establishing that Main Street had any contacts with Massachusetts and that as a result the Massachusetts Long Arm Statute cannot be satisfied.[12]

The Plaintiff, supposedly relying on four different cases, argues broadly that "when an agent or issuer of securities makes numerous calls to a purchaser of securities at his home in a state different from the location of securities or the persons affiliated with the sale of those securities and travels to that state to seek additional funds, sufficient minimum contacts and transaction of business exist to place personal jurisdiction on the sellers of those securities in that person's home state." (# 14 at p. 10). None of the cases that the Plaintiff relies on are securities cases and two of them are completely inapposite—

10. Obviously, in and of itself, the fact that no such correspondence or telephone records exist does not prove that Main Street had no contact with Massachusetts. It does, however, lend weight to the fact that the Plaintiff has not (and likely cannot) produce any documentation of Main Street's purported contacts with Massachusetts.

11. From the Plaintiff's discovery requests, it appears that he did not wish to pursue any

further the issue of whether Cox was an agent of Main Street.

12. Like Norman, even if Main Street could be said to have caused tortious injury within Massachusetts, Main Street had no continuous or meaningful (or any) contacts with Massachusetts and thus prong (d) of the Long Arm Statute is not fulfilled.

*Trans–Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir.1984) is an admiralty case which addresses the issue of federal jurisdiction and *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419 (1st Cir.1991) is a *forum non conveniens* case, not a case dealing with personal jurisdiction. Moreover, neither of the other two cases, *Nowak, supra*, 94 F.3d 708 or *United Electrical, supra*, 987 F.2d 39, stands for the proposition suggested by the Plaintiff. In *Nowak*, the defendant hotel advertised in Massachusetts and solicited customers in Massachusetts; similarly, in *United Electrical*, the defendant had numerous meaningful contacts with Massachusetts, including negotiating contracts in Massachusetts.

As above, because I find that the Long Arm Statute is not satisfied, I need not address the constitutional concerns regarding personal jurisdiction over Main Street. *See, Noonan, supra*, 902 F.Supp. at 306 n. 12 (quoting *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 205 (1st Cir.1994)).

### 3. Dismissal or Transfer

The only remaining issue is whether I should transfer the case for lack of personal jurisdiction, rather than dismissing the case in its entirety. Although the Plaintiff does not directly argue this point, he does imply that if the court finds that venue is improper in Massachusetts, the Court should transfer the case to the Middle District of Florida. The question then becomes whether, under the law, I have the power to do so.

Title 28 U.S.C. § 1631 states that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of *jurisdiction*, the court shall, if it is in the interest of justice, transfer such action ... to any other court in which the action ... could have been brought at the time it was filed." (emphasis added) Chief Judge Young of the U.S. District Court for

the District of Massachusetts has held that the word "jurisdiction" in § 1631 applies only to subject-matter jurisdiction, not personal jurisdiction. *See Pedzewick v. Foe*, 963 F.Supp. 48, 50 (D.Mass.1997) ("This Court agrees with the line of case limiting section 1631 to transfer for lack of subject matter jurisdiction only."). If I follow Chief Judge Young's ruling, there is no basis for me to transfer the case pursuant to 28 U.S.C. § 1631. Since judicial officers prefer to avoid deciding a legal issue contrary to a decision of one of their colleagues on the same court, it is prudent to review other sources of power pursuant to which I might transfer this case.

Title 28 U.S.C. § 1404 permits a transfer "for the convenience of parties and witnesses, in the interest of justice" but the First Circuit has held that § 1404 does not grant a district court the power to transfer a case in the circumstances in which it lacks personal jurisdiction over the defendants. *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir.1999). Since I have found that there is no personal jurisdiction in Massachusetts over the defendants, § 1404 does not furnish the power to transfer the case.

That leaves 28 U.S.C. § 1406 which provides that a court may transfer a case to a district where venue is proper if it is in the interests of justice and if venue in the transferor court was improper. Clearly venue would be proper in the Middle District of Florida.

So the next question with respect to § 1406 is whether venue is proper in the District of Massachusetts. If it is, I do not have the power under § 1406 to transfer the case since a finding the venue does not lie in the transferor is a prerequisite to exercising the transfer power under the section.

Title 28 U.S.C. § 1391(a) provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may be brought otherwise.

As Main Street properly points out, neither provision (1) nor provision (3) of § 1391(a) applies here because the Defendants do not all reside in the same state and there are districts in which the case appropriately could have been filed. Thus, if venue is proper in the District of Massachusetts, it must rest on provision (2) of § 1391(a), and I must determine therefore whether "a substantial part of the events or omissions giving rise to the claim" against Main Street and the claim against Norman occurred in Massachusetts.

Before I answer that question, I will briefly summarize what events related to this lawsuit, according to the Plaintiff's version of the facts, occurred in Massachusetts. First, the Plaintiff· alleges in the Complaint that Main Street "sold securities to Bearse in the District of Massachusetts." I do not accord this statement any weight as the Plaintiff later contradicted himself in his Declaration by asserting that he purchased the Bonds in Florida. *See,* footnote 8, *supra.* Thus, I accept that the Bonds were sold in Florida, not Massachusetts. The Plaintiff further alleges that between May and November, 1994, Cox made numerous telephone calls to him in Massachusetts to ask for more money and

that in July, 1996, Cox made a trip to Massachusetts again to ask for more money. Moreover, the Plaintiff asserts that Cox continued to tell the Plaintiff that the value of the Property was more than the amount of the Bonds and that the Plaintiff would be repaid within six months.

■■ On the basis of this evidence, the Plaintiff's Complaint sets forth the following claims: Count I—fraud against Main Street; Count II—Fraud against Norman; Count III—Negligent Supervision against the Church; and Count IV—Negligent Supervision against the Assembly.[13] As is apparent, the Complaint states multiple claims against multiple parties; in these circumstances, "... plaintiff has the burden of establishing that venue is proper as to each claim." *VDI Technologies v. Price,* 781 F.Supp. 85, 92 (D.N.H.1991) (citations omitted); *see also Hickey v. St. Martin's Press,* 978 F.Supp. 230, 240 (D.Md.1997); *Jarrett v. North Carolina,* 868 F.Supp. 155, 158 (D.S.C., 1994). In the circumstance where venue is based on § 1391(a)(2), "the so-called 'transactional' basis for venue," venue "... must be established against *each* 'claim' and against *each* defendant" for "... there is no pendent venue under 28 U.S.C. § 1391(a)(2)." *McCaskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 525 (S.D.Tex.2001) (citations omitted; emphasis in original). In other words, even if venue were proper as to the negligent supervision claims against the Church (Count III) and the Assembly (Count IV), it would not follow that venue was proper as to the claims of fraud against Main Street and Norman.

In my opinion, a "substantial part of the acts or omission giving rise to the claim" against Main Street and the claim against

---

**13.** As noted in footnote 3, *supra,* the claims against the Church and Assembly have been dismissed by the Plaintiff.

Norman did not occur in Massachusetts. These claims involve alleged fraud in the sale of the Bonds; the sale took place in Florida. In short, venue is improper as to these claims against these Defendants for the same reasons that the Court lacks personal jurisdiction over them. None of the acts with which they are charged occurred in Massachusetts.

Since venue is improper in Massachusetts, I have the power to transfer the case pursuant to 28 U.S.C. § 1406. I find that it is in the interests of justice to do. The Plaintiff's allegations are serious, and in this lawsuit, he seeks to remedy a substantial financial loss. It is far better that the allegations be resolved on the merits than on the basis that the Plaintiff picked a forum in which to sue in which neither personal jurisdiction nor venue existed.

### IV. Conclusion and Order

In conclusion, this Court does not have personal jurisdiction over the Defendants. Venue as to the claims against Main Street and Norman is improper in the District of Massachusetts. The United States District Court for the Middle District of Florida would have personal jurisdiction over the Defendants; further, venue would be proper there. It is in the interests of justice that the case be transferred there.

Accordingly, it is ORDERED that Defendant Main Street's Motion to Dismiss (# 6) and Defendant John Norman's Motion to Dismiss (# 10) be, and the same hereby are, DENIED.

An Order of Transfer issued on October 23, 2001 transferring this case to the Middle District of Florida pursuant to 28 U.S.C. § 1406.