REVISED SEPTEMBER 10, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 98-50119**

---

**LISA CERZA GARDEMAL, Administrator of the**
**Estate of John W. Gardemal, Deceased,**

**Plaintiff-Appellant,**

**VERSUS**

**WESTIN HOTEL COMPANY, doing business as Westin**
**Regina Resort; WESTIN MEXICO SA DE CV,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
For the Western District of Texas

---

August 17, 1999

Before EMILIO GARZA, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-appellant, Lisa Cerza Gardemal ("Gardemal"), sued defendants-appellees, Westin Hotel Company ("Westin") and Westin Mexico, S.A. de C.V. ("Westin Mexico"), under Texas law, alleging that the defendants were liable for the drowning death of her husband in Cabo San Lucas, Mexico. The district court dismissed

the suit in accordance with the magistrate judge's recommendation that the court grant Westin's motion for summary judgment, and Westin Mexico's motion to dismiss for lack of personal jurisdiction. We affirm the district court's rulings.

## I.

In June 1995, Gardemal and her husband John W. Gardemal, a physician, traveled to Cabo San Lucas, Baja California Sur, Mexico, to attend a medical seminar held at the Westin Regina Resort Los Cabos ("Westin Regina"). The Westin Regina is owned by Desarollos Turisticos Integrales Cabo San Lucas, S.A. de C.V. ("DTI"), and managed by Westin Mexico. Westin Mexico is a subsidiary of Westin, and is incorporated in Mexico. During their stay at the hotel, the Gardemals decided to go snorkeling with a group of guests. According to Gardemal, the concierge at the Westin Regina directed the group to "Lovers Beach" which, unbeknownst to the group, was notorious for its rough surf and strong undercurrents. While climbing the beach's rocky shore, five men in the group were swept into the Pacific Ocean by a rogue wave and thrown against the rocks. Two of the men, including John Gardemal, drowned.

Gardemal, as administrator of her husband's estate, brought wrongful death and survival actions under Texas law against Westin and Westin Mexico, alleging that her husband drowned because Westin Regina's concierge negligently directed the group to Lovers Beach

2

and failed to warn her husband of its dangerous condition.[1] Westin then moved for summary judgment, alleging that although it is the parent company of Westin Mexico, it is a separate corporate entity and thus could not be held liable for acts committed by its subsidiary. The magistrate judge agreed with Westin, and recommended that Westin be dismissed from the action. In reaching its decision the magistrate judge rejected Gardemal's assertion that the state-law doctrines of alter-ego and single business enterprise allowed the court to disregard Westin's separate corporate identity. After Westin filed its motion for summary judgment, Westin Mexico also moved to dismiss the suit. In a Rule 12(b)(2) motion, Westin Mexico alleged that there were insufficient minimum contacts to bring it within the personal jurisdiction of the court. Finding that there was neither general nor specific jurisdiction over Westin Mexico, the magistrate judge concluded that personal jurisdiction was in fact lacking and recommended that Westin Mexico be dismissed.

Gardemal timely objected to the magistrate judge's two recommendations. Applying a *de novo* standard of review, the district court accepted the magistrate judge's recommendations and dismissed Gardemal's suit. Gardemal now appeals, alleging that the district court erred in granting Westin's motion for summary

---

[1] Gardemal also asserted a claim under the Texas Deceptive Trade Practices Act ("DTPA"). Tex. Bus. & Com. Code § 17.41, *et seq*.

3

judgment, and Westin Mexico's motion to dismiss.  We affirm.


                              II.

    We review a district court's grant of summary judgment *de novo*.  ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986); ***Todd v. AIG Life Ins. Co.***, 47 F.3d 1448, 1451 (5th Cir. 1995).  Summary judgment is appropriate if the record reveals "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making this determination, we must evaluate the facts in the light most favorable to the non-moving party.  ***Matsushita***, 475 U.S. at 587; ***Todd***, 47 F.3d at 1451.

    A district court's dismissal for want of personal jurisdiction is subject to *de novo* review.  ***Jobe v. ATR Mktg., Inc.***, 87 F.3d 751, 753 (5th Cir. 1996).  When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant.  ***Wilson v. Belin***, 20 F.3d 644, 649 (5th Cir. 1994).  When, as in this case, the district court rules on the motion without an evidentiary hearing, the plaintiff may satisfy its burden by presenting a *prima facie* case for jurisdiction.  ***Felch v. Transportes Lar-Mex S.A. de C.V.***, 92 F.3d 320, 326 (5th Cir. 1996).  In deciding whether a *prima facie* case has been made, "uncontroverted allegations in the plaintiff's complaint must be

4

taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." ***Bullion v. Gillespie***, 895 F.2d 213, 217 (5th Cir. 1990).

III.

Two separate issues confront us in this appeal. The first is whether the district court properly granted Westin's motion for summary judgment. The second is whether the district court erred in granting Westin Mexico's motion to dismiss for lack of personal jurisdiction. We address each in turn.

A.

In this action Gardemal seeks to hold Westin liable for the acts of Westin Mexico by invoking two separate, but related, state-law doctrines. Gardemal first argues that liability may be imputed to Westin because Westin Mexico functioned as the alter ego of Westin. *See* ***Castleberry v. Branscum***, 721 S.W. 2d 270, 272 (Tex. 1986) (explaining that under Texas law corporate form may be disregarded if corporation functions as alter-ego of another corporation). Gardemal next contends that Westin may be held liable on the theory that Westin Mexico operated a single business enterprise. *See* ***Old Republic Ins. Co. v. Ex-Im Servs. Corp.***, 920 S.W. 2d 393, 395-96 (Tex. App--Houston [1st Dist.] 1996, no writ) (explaining that under Texas law corporate form may be disregarded

5

when corporations are not operated as separate entities but rather integrate their resources to achieve a common business purpose). We consider first the issue of whether Westin may be held liable on an alter-ego theory.

1.

Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit. *Hall v. Timmons*, 987 S.W. 2d 248, 250 (Tex. App.--Beaumont 1999, no writ); *Castleberry*, 721 S.W. 2d at 272. It applies "when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased and holding only the subsidiary corporation liable would result in injustice." *Harwood Tire--Arlington, Inc. v. Young*, 963 S.W. 2d 881, 885 (Tex. App.--Fort Worth 1998, writ dism'd by agr.). Alter ego is demonstrated "by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations. *Hideca Petroleum Corp. v. Tampimex Oil Int'l Ltd.*, 740 S.W. 2d 838, 843 (Tex. App.--Houston [1st Dist.] 1987, no writ). An important consideration is whether a corporation is underfunded or undercapitalized, which is an indication that the company is a mere conduit or business tool.

6

*Lucas v. Texas Indus., Inc.*, 696 S.W. 2d 372, 374 (Tex. 1984).[2]

On appeal Gardemal points to several factors which, in her opinion, show that Westin is operating as the alter ego of Westin Mexico. She claims, for example, that Westin owns most of Westin Mexico's stock; that the two companies share common corporate officers; that Westin maintains quality control at Westin Mexico by requiring Westin Mexico to use certain operations manuals; that Westin oversees advertising and marketing operations at Westin Mexico through two separate contracts; and that Westin Mexico is grossly undercapitalized. *See United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985) (listing the numerous factors used in alter ego analysis); *Castleberry*, 721 S.W. 2d at 272 (same). Gardemal places particular emphasis on the last purported factor, that Westin Mexico is undercapitalized. She insists that this factor alone is sufficient evidence that Westin Mexico is the alter ego of Westin. *See Jon-T Chemicals, Inc.*, 768 F.2d at 692-93 (explaining that undercapitalization is an important factor in alter-ego analysis). We are not convinced.

The record, even when viewed in a light most favorable to

---

[2]    The rationale behind the "alter ego" theory is that if the shareholders  themselves, or the corporations themselves, disregard the legal separation, distinct properties, or proper formalities of the different corporate enterprises, then the law will likewise disregard them so far as is necessary to protect individual and corporate creditors. *Castleberry*, 721 S.W. 2d at 272.

Gardemal, reveals nothing more than a typical corporate relationship between a parent and subsidiary. It is true, as Gardemal points out, that Westin and Westin Mexico are closely tied through stock ownership, shared officers, financing arrangements, and the like. But this alone does not establish an alter-ego relationship. As we explained in *Jon-T Chemicals, Inc.*, there must be evidence of complete domination by the parent.

> The control necessary . . . is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal.

*Id.* at 691 (citation and quotation omitted). Thus, "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Id.*

In this case, there is insufficient record evidence that Westin dominates Westin Mexico to the extent that Westin Mexico has, for practical purposes, surrendered its corporate identity. In fact, the evidence suggests just the opposite, that Westin Mexico functions as an autonomous business entity. There is evidence, for example, that Westin Mexico banks in Mexico and deposits all of the revenue from its six hotels into that account. The facts also show that while Westin is incorporated in Delaware, Westin Mexico is incorporated in Mexico and faithfully adheres to

8

the required corporate formalities. Finally, Westin Mexico has its own staff, its own assets, and even maintains its own insurance policies.

Gardemal is correct in pointing out that undercapitalization is a critical factor in our alter-ego analysis, especially in a tort case like the present one. *See Jon-T Chemicals, Inc.*, 768 F.2d at 693. But as noted by the district court, there is scant evidence that Westin Mexico is in fact undercapitalized and unable to pay a judgment, if necessary. This fact weighs heavily against Gardemal because the alter ego doctrine is an equitable remedy which prevents a company from avoiding liability by abusing the corporate form. "We disregard the corporate fiction . . . when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Castleberry*, 721 S.W. 2d at 271-72 (citation and quotation omitted); *see also Roy E. Thomas Construction Co. v. Arbs*, 692 S.W. 2d 926, 938 (Tex. App.--Fort Worth 1985, writ ref'd n.r.e.) ("It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering to the corporate fiction before the corporate veil will be pierced."). In this case, there is insufficient evidence that Westin Mexico is undercapitalized or uninsured. Moreover, there is no indication that Gardemal could not recover by suing Westin Mexico directly. As a result, equity does not demand that we merge and disregard the

9

corporate identities of Westin and Westin Mexico. We reject Gardemal's attempt to impute liability on Westin based on the alter-ego doctrine.

2.

Likewise, we reject Gardemal's attempt to impute liability to Westin based on the single business enterprise doctrine. Under that doctrine, when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose. *Old Republic Ins. Co. v. Ex-Im Serv. Corp.*, 920 S.W. 2d 393, 395-96 (Tex. App--Houston [1st Dist.] 1996, no writ). Like the alter-ego doctrine, the single business enterprise doctrine is an equitable remedy which applies when the corporate form is "used as part of an unfair device to achieve an inequitable result." *Id.* at 395.

On appeal, Gardemal attempts to prove a single business enterprise by calling our attention to the fact that Westin Mexico uses the trademark "Westin Hotels and Resorts." She also emphasizes that Westin Regina uses Westin's operations manuals. Gardemal also observes that Westin allows Westin Mexico to use its reservation system. Again, these facts merely demonstrate what we would describe as a typical, working relationship between a parent and subsidiary. Gardemal has pointed to no evidence in the record

10

demonstrating that the operations of the two corporations were so integrated as to result in a blending of the two corporate identities. Moreover, Gardemal has come forward with no evidence that she has suffered some harm, or injustice, because Westin and Westin Mexico maintain separate corporate identities.

Reviewing the record in the light most favorable to Gardemal, we conclude that there is insufficient evidence that Westin Mexico was Westin's alter ego. Similarly, there is insufficient evidence that the resources of Westin and Westin Mexico are so integrated as to constitute a single business enterprise. Accordingly, we affirm the district court's grant of Westin's motion for summary judgment on that issue. We turn next to whether the district court erred in granting Westin Mexico's motion to dismiss for lack of personal jurisdiction.

B.

The due process clause limits the power of a state to assert personal jurisdiction over a nonresident defendant. Its require-ments are satisfied when the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945) (citation and quotation omitted). In evaluating minimum contacts with the forum, we must determine

11

whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To assist in the minimum contacts analysis, the Supreme Court has drawn a distinction between specific and general jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984); *Coats v. Penrod Drilling*, 5 F.3d 877, 884 (5th Cir. 1993). Each, if proven, supports the exercise of personal jurisdiction over the defendant. *Coats*, 5 F.3d at 884.

To establish specific jurisdiction, the defendant must have purposely directed his activities at the resident of the forum, and the litigation must result from the alleged injuries that "arise out of or relate to" the defendant's activities directed at the forum. *Burger King*, 471 U.S. at 474; *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). The focus is on the relationship between the defendant, the forum, and the litigation. *Burger King*, 471 U.S. at 474. Where the cause of action is not related to or does not arise from the defendant's activities in the forum, the forum may still assert general jurisdiction over the defendant if the defendant's contacts with the forum are of a "continuous and systematic" nature. *Helicopteros*, 466 U.S. at 414-15. Due process requires "continuous and systematic" contacts because the forum

12

state does not have a direct interest in the underlying dispute. *Helicopteros*, 466 U.S. at 415-16. As such, "the minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

On appeal Gardemal contends that the district court has specific jurisdiction over Westin Mexico because her husband decided to attend the seminar after reading a brochure about the Westin Regina resort. We disagree. As noted by the district court, the record reflects that the medical seminar at Cabo San Lucas was arranged and promoted by Smith & Nephew Richards, Inc., a supplier of orthopedic hardware. The facts also show that the Gardemals obtained the brochure from Smith & Nephew Richards, Inc. with the registration materials for the seminar. There is no specific evidence that Westin Mexico, or the Westin Regina, were involved in promoting the seminar or soliciting the Gardemals. Accordingly, there is simply no basis for the exercise of specific jurisdiction over Westin Mexico.

Gardemal also asserts that there is general jurisdiction over Westin Mexico. In an effort to prove continuous and systematic contacts between Westin Mexico and Texas, Gardemal claims that Westin Mexico advertised in several newspapers and magazines in Texas. She also contends that Westin Mexico contracted with

13

numerous Texas businesses, like American Airlines, Continental Airlines, and various wholesalers in the travel industry. The magistrate judge rejected that argument, finding that "there is no evidence . . . as to how frequently Westin Mexico ran ads in [newspapers or magazines] or how much business they generated." The court also found no "proof as to the specific relationship between Westin Mexico and the Texas tourist companies or the amount of business these companies have generated for Westin Mexico." Having reviewed the record, we too find no basis for exercising general jurisdiction in this case.

Gardemal's assertions are vague and overgeneralized. They give no indication as to the extent, duration, or frequency of Westin Mexico's business dealings in Texas. Thus, even if taken as true, Gardemal's assertions amount to little more than a vague claim that Westin Mexico conducts business in Texas. Additionally, the record in this case reveals that Westin Mexico has no employees in Texas, has no office or address in Texas, and, as noted by the magistrate judge, has "never owned, bought, sold, or leased any property in Texas, or been registered to transact business in Texas." On these facts, we cannot conclude that Westin Mexico has the continuous and systematic contacts necessary for the exercise of general jurisdiction.

We conclude that the district court did not err in finding that personal jurisdiction is lacking over Westin Mexico. We affirm the district court's grant of Westin Mexico's motion to dismiss.[3]

**AFFIRMED.**

---

[3] In this appeal Gardemal also contends that the district court erred in (1) granting summary judgment on her state law claim under the DTPA, (2) refusing to allow Gardemal to file a second amended complaint asserting additional claims under the DTPA, and (3) striking an affidavit from Gardemal's expert witness. These arguments are without merit.