United States Court of Appeals
For the First Circuit

No. 99-1504

ROSARIO DIAZ DE CASTRO, MARGARITA DE CASTRO,

Plaintiffs, Appellants,

v.

SANIFILL, INC., JOHN DOE, INC., RICHARD DOE, ABC WASTE, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell, Senior Circuit Judge,

and O'Toole, District Judge.

Elisa Bobonis Lang for appellants.
Luis R. Perez-Giusti, with whom Leonard Mignucci & Perez
Giusti was on brief for appellees.

December 8, 1999

CAMPBELL, Senior Circuit Judge. This appeal is from the
district court's dismissal for lack of personal jurisdiction of
plaintiffs DeCastros' diversity action for personal injuries caused
by a waste disposal truck in Puerto Rico. Plaintiffs have sued
Sanifill, Inc. ("Sanifill"), a Delaware corporation with its
principal place of business in Houston, Texas. On the basis of
documentary evidence garnered in the course of limited discovery,
the district court held that Sanifill lacked the minimum contacts
necessary for Puerto Rico to exercise personal jurisdiction over
it. The district court also dismissed the action insofar as it
sought to proceed against "John Doe, Inc., Richard Doe and ABC
Waste, Inc." We affirm.
I.
In dismissing the complaint against Sanifill, the
district court determined, in effect, that the activities of
relevance to the truck-caused injury in Puerto Rico were largely
attributable to Sanifill's wholly-owned Puerto Rican subsidiaries,
primarily two Puerto Rican corporations named Sanifill of San Juan,
Inc. ("Sanifill San Juan") and E.C. Waste of Puerto Rico, Inc.
("E.C. Waste"). Sanifill San Juan was organized on August 21,
1995, and E.C. Waste on October 31, 1995. On August 25, 1995 
prior to the formation of E.C. Waste a municipal solid waste
services agreement was executed between the Municipality of San
Juan and a joint venture entitled El Coqui of San Juan ("El
Coqui"), the latter described as being composed of the two said
corporations. Signing for the joint venture were the general
manager and officers of E.C. Waste and Sanifill San Juan. 
The injury for which plaintiffs sued occurred on January
3, 1996. The truck alleged to have caused the accident was
registered to Sanifill San Juan. It was used for hauling waste
pursuant to the August 25, 1995, agreement between the Municipality
of San Juan and the joint venture, El Coqui. Its driver is said to
have been employed by the joint venture itself.
There is no evidence directly establishing that Sanifill,
the parent corporation, owned or operated the truck or controlled
the day-to-day activities of its subsidiaries or of the joint
venture. Clearly, Sanifill's mere ownership of the two local
corporate entities that participated in the El Coqui joint venture
would not establish a measure of control over them sufficient for
us to reject their own corporate identity; nor would the fact that
the officers and directors of the two local corporations were also
officers and directors of the parent. See United Elec., Radio and
Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d
1080, 1091 (1st Cir. 1992), rev'd on other grounds, 987 F.2d 39
(1st Cir. 1993); Miller v. Honda Motor Co., Ltd., 779 F.2d 769, 772
(1st Cir. 1985); Escude Cruz v. Ortho Pharmaceutical Corp., 619
F.2d 902, 905 (1st Cir. 1980).
This court has said, citing a pronouncement of the
Supreme Court of Puerto Rico, that to establish jurisdiction over
the parent, a party must produce "strong and robust" evidence of
control by the parent company over the subsidiary, rendering the
latter a "mere shell." Escude Cruz, 619 F.2d at 905, citing San
Miguel Fertilizer v. P.R. Drydock & Marine Terminals, 94 P.R.R.
403, 409 (1967). In the present case, while there was no direct
evidence of parental involvement, as such, in the day-to-day
activities of the two subsidiaries or in their joint venture, the
plaintiffs point to convincing evidence that the subsidiaries
lacked assets and were not themselves active following execution of
the waste haulage agreement on behalf of the joint venture. Apart
from certificates attesting to the organization of the two
subsidiary corporations on the above dates, there is little else to
suggest their viability. Annual reports for 1995 and 1996 that
were filed after the accident with Puerto Rican authorities on
behalf of each company list the names of directors but state
expressly that both corporations had zero assets in 1995 and 1996. 
Letters from Coopers & Lybrand, directed to the subsidiaries'
respective boards of directors, state that the accountants had
conducted no audit of either company's books because each company
"was inactive and had no assets within Puerto Rico in the year
1996." From this it can be surmised that neither subsidiary
maintained books or records indicating the value of its interest in
the joint venture, nor had active bank accounts or employees on its
payroll. The parent, Sanifill, presumably received the proceeds
from its Puerto Rican ventures in some manner, but not through the
ostensible venturers, Sanifill San Juan and E.C. Waste.
It thus appears that, besides executing the waste haulage
agreement with the municipality of San Juan in August of 1995 on
behalf of the El Coqui joint venture, and registering the truck in
question in the name of Sanifill San Juan, neither subsidiary was
active. This assumption is consistent not only with the companies'
annual reports and their accountants' statements, but with an
unsworn declaration filed on behalf of defendants by Pablo De Jesus
Ramos, who stated therein that he was the operations manager of El
Coqui, the joint venture. In the declaration, De Jesus Ramos
indicated that the decisional and operational activities of the
joint venture under the contract with the Municipality of San Juan
were conducted directly by El Coqui itself. We note also the
existence of another corporate subsidiary of Sanifill entitled El
Coqui de San Juan, Inc., which conceivably assisted in the
operations of the joint venture, although its actual role is not
explained anywhere in the record.
The question arises on these facts whether the two
subsidiaries in question were so shell-like by virtue of their
inactivity as to forfeit recognition as corporations separate from
their parent, whose interests they serve. In determining whether
to disregard the corporate form, courts normally conduct a highly
fact-specific inquiry, including, inter alia, consideration of the
extent to which a subsidiary may have disregarded corporate
formalities; the degree of control exercised by the parent over the
day-to-day operations of the subsidiary; overlap in ownership,
officers, directors, and personnel; and whether the subsidiary was
adequately capitalized. See Miller v. Honda Motor Co., 779 F.2d
769, 772 (1st Cir. 1985) (applying Massachusetts law); Gardemal v.
Westin Hotel Co., 186 F.3d 588, 593-94 (5th Cir. 1999) (applying
Texas law); Wm. Passalaqua Builders, Inc. v. Resnick Developers
South, Inc., 933 F.2d 131, 139 (2d Cir. 1991) (applying New York
law). See also William Meade Fletcher, Fletcher Cyclopedia of the
Law of Private Corporations 43.70 (1999 ed.).
In some cases, undercapitalization has been held to
indicate that the company is merely a "conduit or business tool." 
Gardemal, 186 F.3d at 593-94. See also Birbara v. Locke, 99 F.3d
1233, 1241 (1st Cir. 1996); 163 Pleasant Street Corp., 960 F.2d at
1093. The adequacy of capital, however, is determined within the 
context of the relevant corporate purposes and activities, see NLRB
v. Greater Kansas City Roofing, 2 F.3d 1047, 1053 & n.8 (10th Cir.
1993), and one can argue here that no capital was shown to have
been needed for Sanifill San Juan and E.C. Waste to enter into the
joint venture. Undercapitalization has been called a particularly
critical factor in tort cases, where equitable concern about a
company's inability to pay a judgment to a prevailing plaintiff
comes into play. See Gardemal, 186 F.3d at 594; Fletcher, supra at
41.45. Still, the mere lack of funding has been held
insufficient to pierce the corporate veil, and courts are reluctant
to infer injustice unless the particular facts so suggest. See
Greater Kansas City Roofing, 2 F.3d at 1053 & n.8, and cases
cited.
Here, the apparent purpose of the subsidiaries was to set
up the El Coqui joint venture and empower it (rather than
themselves) to carry out the functions described in the affidavit
of De Jesus Ramos: i.e., quality control; execution of contracts;
supervision, hiring and firing of personnel; and accounting and
invoicing. When viewed "in light of the nature and magnitude of
the corporate undertaking," the lack of capital does not
necessarily indicate that each subsidiary is merely a "conduit or
business tool" of Sanifill. See id. at 1053 n.8. As we have
said, there is no direct evidence of Sanifill's control of day-to-
day operations. And while inferring such control from the
inactivity of the subsidiaries might be appropriate under some
circumstances, here there is evidence that the decision-making and
day-to-day operational functions were carried out by the El Coqui
joint venture itself rather than Sanifill. Furthermore, while
there is substantial overlap among the officers and directors of
Sanifill and the subsidiaries, formal corporate separateness was
observed at the most basic level. In sum, although this is a close
case, we are inclined to believe that these facts fall short of the
"strong and robust" evidence required to pierce the corporate veil
under Puerto Rico law.
II.
The district court also dismissed plaintiffs' claims
against several unnamed defendants for failure to prosecute,
stating that those defendants had not been identified or summoned. 
Plaintiffs contend that this was error, as discovery thus far had
been limited to the issue of personal jurisdiction and they had not
yet had the opportunity to identify the unnamed defendants. 
We review a district court's dismissal for failure to
prosecute for abuse of discretion. Benjamin v. Aroostook Medical
Center, Inc., 57 F.3d 101, 107 (1st Cir. 1995). In their
complaint, plaintiffs described "John Doe, Inc." and "Richard Doe"
as being "in charge of the business operation that used and
controlled the vehicle that caused the accident, the owners of such
vehicle, or the persons responsible for its use, operation and
maintenance." Moreover, they stated that "ABC Waste Inc." is an
unnamed corporation "who acquire or merge with Sanifill" [sic]. 
The purported roles of these unnamed defendants are very closely
linked with the issues of corporate identity that were the subject
of the jurisdictional discovery that the district court allowed. 
We think that the allowed discovery afforded plaintiffs sufficient
opportunity to pursue these defendants' identities. Accordingly,
the district court did not abuse its discretion in dismissing the
complaint against the unnamed defendants.
Affirmed. Costs to appellees.