**Captain Sheriff SAUDI, Plaintiff**

**v.**

**S/T MARINE ATLANTIC, Her Equipment and Appurtenances, In Rem (a/k/a M/V Marine Atlantic, Her Equipment and Appurtenances, In Rem, a/k/a M/T Marine Atlantic, Her Equipment and Appurtenances, In Rem), Marine Atlantic, Ltd., John Doe Company, Owner of the Vessel Marine Atlantic, Acomarit Services Maritimes, S.A., Osprey Acomarit Ship Management, Inc., Valmet–Appleton Inc., Appleton Machine Co. (Appleton Marine Division), Appleton Machine Co., Inc., Appleton Marine, Inc., John Doe Company, Designer of the Crane, Koch Petroleum Group, L.P., Jurong Shipyard, Ltd. and United States Trust Company of New York, Defendants**

No. CIV. A. H–99–2367.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 21, 2000.

Joe Alfred Izen, Jr., Izen & Associates, Bellaire, TX, Afton Jane Izen, Bellaire, TX, for plaintiff.

Thomas R Nork, Bell Ryniker et al., Houston, TX, for S/T MARINE ATLAN-TIC, Acomarit Services Maritime, SA, Osprey Acomarit Ship Management, Inc., defendants.

Hollis Horton, Orgain, Bell & Tucker, Beaumont, TX, for Appleton Machine Co., Appleton Machine Co., Inc., Appleton Marine, Inc., defendants.

F Michael Stenglein, Weil Gotshal & Manges, Houston, TX, for U.S. Trust Company of New York, defendant.

Michael Evan Jaffe, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Michael D Hudgins, Hudgins Hudgins and Warrick, Houston, TX, David Kelleher,

Stephen M. Hall, Arent Fox et al., Washington, DC, for Valmet-Appleton Inc., defendant.

Steven Michael Duble, Hays McConn Rice and Pickering, Houston, TX, for Koch Petroleum Group, Koch Shipping, Inc., Koch Supply and Trading, Co., defendants.

David Patrick Ayers, Fulbright & Jaworski, Houston, TX, Innes A MacKillop, White MacKillop et al., Houston, TX, for Marine Transport Lines, Inc., Marine Transport Corp., defendants.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced admiralty and maritime personal injury action, arising from the May 17, 1999 fall of Plaintiff Captain Sheriff Saudi ("Plaintiff" or "Saudi") from a lifting basket as he was transferred from the tanker Marine Atlantic to the M/V American Discovery because of the collapse of an allegedly defective portside crane on the tanker Marine Atlantic, is *inter alia* Defendant Marine Atlantic Ltd.'s opposed motion to dismiss for lack of personal jurisdiction (# 162).

▆▆▆ With a supporting affidavit (# 164) from its Director and Vice President Arthur Jones, Defendant Marine Atlantic Ltd. argues that this Court lacks personal jurisdiction over it.[1] First, its vessel, the Marine Atlantic, at approxi-

---

1. Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident in a diversity action to the extent allowed under the law of the state where the district court sits. A Texas court has personal jurisdiction under the Texas long-arm statute over a foreign defendant that "does business" in Texas. i.e., that (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in Texas; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside of Texas. Tex. Civ. Prac. & Rem.Code § 17.042–.045 (West 1999). The Texas Supreme Court has interpreted the language of its long-arm statute to reach as far as the federal constitutional requirements of due process will allow. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Thus the Court examines the due process requirements.

A party's liberty interest under the fourteenth amendment "protects it from being subjected to binding judgments of a forum with which it has established 'no meaningful contacts, ties or relations.'" *Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 623 (5th Cir.1999), *quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and *International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The due process clause requires that a foreign defendant have "mini-mum contacts" with the forum state so that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *Id., citing International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. For minimum contacts, a nonresident defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 595 (5th Cir.1999).

Where a nonresident defendant has sufficient "continuous and systematic" contacts with the state in which the suit is pending, the court may exercise "general" personal jurisdiction over that party in a cause of action that does not arise out of or relate to that defendant's contacts with the forum state. *Guidry,* 188 F.3d at 623, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "Continuous and systematic contacts" are required by the due process clause because the forum state does not have a direct interest in the cause of action. *Gardemal,* 186 F.3d at 595. Thus the minimum contacts review is more demanding and broader for general jurisdiction and requires the plaintiff to demonstrate substantial activities in the forum state. *Id.*

Where the controversy "is related to or 'arises out of' [the defendant's] contacts with the forum," the district court may exercise "specific" personal jurisdiction. *Guidry,* 188

mately 400,000 deadweight tons and with a deep draft of seventy-five feet when fully loaded, is unable to enter into any port in the continental United States, including any port in Texas. It is physically impossible for the vessel to navigate within the territorial waters of Texas, which extend approximately ten miles seaward from the state of Texas. At the time of Saudi's injury, the vessel was operated by Acomarit Services pursuant to a Vessel Management Agreement between Marine Atlantic Ltd. and Acomarit and was char-tered by Koch Shipping, Inc., which directly ordered the vessel to ports for loading and discharging of the cargo, pursuant to a Time Charter Agreement between Marine Atlantic Ltd. and Koch. As owner, Marine Atlantic Ltd. did not exercise day-to-day operational control of the vessel or control her location. The contract between Marine Atlantic Ltd. and Acomarit was not negotiated in Texas, nor is either a Texas entity. The contract between Marine Atlantic Ltd. and

F.3d at 623, *citing Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The court must examine the relationship among the defendant, the forum state, and the litigation to determine whether the defendant purposefully established "minimum contacts" with the forum state that made it foreseeable that it should "reasonably anticipate being haled into court there." *Id.* at 625, *citing Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. To decide if there is specific jurisdiction, the district court must apply a three-prong test: (1) whether the defendant has minimum contacts with the forum state, i.e., did it purposely direct its activities toward the forum state or purposely avail itself of the privilege of conducting activities there; (2) did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts; and (3) would the exercise of personal jurisdiction be fair and reasonable? *Id.*

If the court finds that the foreign defendant's related or unrelated contacts with the forum state are sufficient, it then examines whether the exercise of jurisdiction is "fair" by examining several factors relating to "traditional notions of fair play and substantial justice": (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *Felch v. Transportes Lar–Mex SA De CV*, 92 F.3d 320, 324 (5th Cir.1996).

The party that invokes a federal court's jurisdiction bears the burden of establishing minimum contacts that warrant the exercise of personal jurisdiction over a foreign defen-dant. *Id., citing Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). If the court rules on a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, the nonmoving party need only make a *prima facie* showing, through pleadings, depositions, affidavits, exhibits, or any combination of recognized methods of discovery, of minimum contacts of each defendant to support specific personal jurisdiction and demonstrate that the cause of action arose out of that defendant's forum-related contacts; the court must accept as true the nonmovant's allegations and resolve all factual disputes in its favor. *Id., citing Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999), and *Bullion*, 895 F.2d at 217 ("uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor"); *Colwell Realty Investments v. Triple T Inns of Arizona*, 785 F.2d 1330, 1333 (5th Cir.1986). Ultimately, the plaintiff must establish personal jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. *Felch*, 92 F.3d at 326, *citing Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir.1986), *modified on rehearing in unrelated part*, 836 F.2d 850 (5th Cir.1988), and *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270–71 & n. 12 (5th Cir.1983) (only where the district court decides a motion to dismiss for lack of personal jurisdiction without a hearing may the plaintiffs satisfy their burden by presenting a *prima facie* case).

A dismissal for lack of personal jurisdiction is not a dismissal on the merits and must therefore be without prejudice. *Guidry*, 188 F.3d at 623.

Koch also was not negotiated in Texas and neither is a Texas entity. Acomarit's contract performance took place in Geneva, Switzerland, while Koch's contract performance occurred in Kansas.

Marine Atlantic Ltd. argues that this Court lacks specific jurisdiction over it because this action does not arise out of or relate to any contact between it and Texas or any activities in Texas, but only to activities on the high seas, in international waters. Marine Atlantic Ltd. maintains that it has no contacts with Texas. It cites as on-point authority for its dismissal, *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.1990), in which the defendant was dismissed because it had no contacts with the forum, lacked control over where the vessel would make port, and never called and was physically unable to call on a Texas port.

Marine Atlantic Ltd. also insists the Court lacks general jurisdiction over it because it is not authorized to do business in Texas, never had an agent for service of process in Texas, never had an employee based in Texas, never owned any real property in Texas, never maintained an office in Texas, does not maintain any records in Texas, never solicited business in Texas and never signed a contract in Texas for performance of work in Texas. It has no contacts with Texas and lacked authority to direct the vessel's movement.

In response, asserting that the S/T Marine Atlantic's deep draft and inability to enter the territorial waters of Texas are not fatal to the assertion of jurisdiction here, Saudi complains that Marine Atlantic Ltd. avoids any discussion of its contacts with states other than Texas and with the United States in generally. He argues that the commentary to Federal Rule of Civil Procedure 4(k)(2) indicates that the rule was intended by Congress to extend nationwide federal personal jurisdiction over defendants with sufficient contacts with the United States as a whole where the exercise of such personal jurisdiction would not "offend the traditional concepts of fair play and substantial justice". Because Marine Atlantic Ltd. failed to address its contacts with the United States as a whole, Saudi insists that Marine Atlantic Ltd.'s motion is defective and cannot support the requested dismissal. He comments that the now complete [2] affidavit of Arthur Jones also "studiously avoids making any denial that [Marine Atlantic] has no contacts with the United States."

Moreover, Saudi emphasizes, Marine Atlantic Ltd. has admitted having done business with Koch Shipping, Inc., a United States company. With other factors, such as hiring United States residents to conduct business for its benefit, this point may be sufficient to sustain personal jurisdiction, insists Saudi. Marine Atlantic Ltd. has conceded that Koch Shipping, Inc.'s portion of the charter contract was performed in Kansas.

Saudi alleges that Robert Hamshaw and Greg Doyle are agents of Marine Atlantic Ltd. Saudi submits a letter dated May 3, 2000, written by Thomas Nork, whom Saudi characterized as apparent counsel for Marine Atlantic Ltd. at that time,[3] stating that Robert Hamshaw would not appear for his noticed deposition and that "Ham-

**2.** Saudi states that the affidavit, which he previously had received as exhibit A to Marine Atlantic Ltd.'s earlier motion to dismiss for lack of jurisdiction, lacked a second page.

**3.** Saudi fails to mention, but the letter makes clear, that at the time Marine Atlantic, Ltd.

was not party to this suit and had not been served. Nork expressly informed Mr. Izen, "This office will not accept service of suit papers on behalf of Marine Atlantic Ltd. at this time."

shaw's relationship with Marine Atlantic Ltd., if any," was unclear. Ex. A to # 173. Nevertheless, Saudi argues, Hamshaw's name was listed as the agent designated to receive notice for ship owners in the Acomarit Ship Management Agreement with Marine Atlantic Ltd. Ex. B to # 173. In an affidavit filed on March 22, 2000, Hamshaw identified himself as an "assistant secretary for Marine Atlantic Ltd.," but claimed he was not a registered agent for service of process on Marine Atlantic Ltd., nor its president, treasurer, clerk or cashier, but was employed as Executive Vice President of Alpha Export Services, Inc. in New York City. He also stated that Marine Atlantic Ltd. did not maintain a business office in New York City. Ex. C.

Similarly, Greg Doyle, in a previously filed affidavit, identified himself as "self-employed," and as "a chartering manager for the vessel S/T Marine Atlantic." He admitted working in the United States, but maintained that he was not an employee of Marine Atlantic Ltd. and that it did not have a business address in Massachusetts.[4]

Saudi asked for additional discovery to determine the precise relationship of Hamshaw and Doyle to Marine Atlantic Ltd. and the full extent of business and activities they carried out on its behalf in the United States. *New York Marine Managers, Inc. v. N.V. TOPOR–1,* 716 F.Supp. 783, 785 (S.D.N.Y.1989) (foreign company's listing of a United States company's office address as its own constituted strong evidence that the foreign company was using the United States company as its New York agent and the court had personal jurisdiction; a foreign company cannot carry out business in the United States through surrogates and thereby avoid the reach of personal jurisdiction).

Saudi charges that this evidence, viewed in a light favorable to him, "establishes that Marine Atlantic Ltd. has attempted to order its affairs in such a manner as to carry out business through executives or agents who are hired by other companies and perform acts which Marine Atlantic Ltd. would have to perform for itself if these U.S. agents or employees were not available to do so." He claims that, like Tom Garrett, the ostensible employee of Acomarit Services, Maritimes, S.A., Doyle and Hamshaw purport to be employees of United States companies but are carrying out activities for foreign companies in the United States. In a footnote Saudi observes, "This carrying out of business through clandestine surrogates in order to avoid the jurisdiction of the U.S. Courts is a common theme in this case." Instrument # 174 at 6 n. 4.

In reply, Marine Atlantic Ltd. emphasizes that this Court, in an order of August 31, 2000, entered on September 5, 2000 (# 159), set aside the entry of default against Marine Atlantic Ltd. Marine Atlantic Ltd. contends that that order bars Plaintiff from asserting that Rule 4(k)(2)[5] jurisdiction exists over Marine Atlantic Ltd. because Rule 4(k)(2) jurisdiction is premised upon effective service of summons or a valid waiver of service. Marine Atlantic Ltd. never waived service of process, and the Court's order found that

---

**4.** Nork's letter to Izen states that Nork's firm understands that Doyle "is not an employee of Marine Atlantic Ltd." and thus also would not likely appear for his noticed deposition.

**5.** Fed.R.Civ.P. 4(k)(2) reads,

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts or general jurisdiction of any state.

Marine Atlantic Ltd.. was not properly served with process. Therefore the predicate requirement for application of 4(k)(2) jurisdiction does not exist and Plaintiff is barred by *res judicata* or collateral estoppel from asserting that proper service occurred in this case.[6] Furthermore, Plaintiff failed to serve Marine Atlantic Ltd. within 120 days of the date of filing of the original complaint, as required by Fed. R.Civ.P. 4(m) and failed to request timely an extension of that time period. Saudi has not shown grounds for excusable neglect to support an extension of the service period. Moreover, Marine Atlantic Ltd. has never waived its affirmative defenses of insufficiency of process and insufficiency of service of process. Thus there is no basis to assert personal jurisdiction under Rule 4(k)(2) over Marine Atlantic Ltd.

Moreover, urges Marine Atlantic Ltd., there is also no basis for conducting additional jurisdictional discovery. Plaintiff has had more than fifteen months to conduct such discovery and has done nothing. In sum, the Court should dismiss Marine Atlantic Ltd. from this case for lack of personal jurisdiction.

■ This Court has indicated several times to Plaintiff's counsel that the party that invokes a federal court's jurisdiction bears the burden of establishing minimum contacts that warrant the exercise of personal jurisdiction over a foreign defendant. *Felch v. Transportes Lar–Mex SA De CV*, 92 F.3d 320, 324 (5th Cir.1996), *citing Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). Therefore Saudi's efforts to place that burden on Marine Atlantic Ltd. by arguing that it has avoided discussing its contacts with the United States as a whole are misguided.

■ This Court agrees that Plaintiff has failed to show that valid service of process was ever effected on Marine Atlantic Ltd., which voluntarily appeared only after a default judgment was entered against it and filed its answer (# 95) asserting lack of personal jurisdiction as its first defense. Moreover, Plaintiff has had substantial time to find sufficient minimum contacts of Marine Atlantic Ltd. with Texas or, if Rule 4(k)(2) did apply, with the United States to justify this Court's assertion of personal jurisdiction over Marine Atlantic Ltd. Nevertheless he has failed to allege, no less support with evidence, the existence of such contacts, but instead has indulged in mere suspicion and speculation. Moreover, most of the arguments raised in this motion and its response and reply are the same as those ruled on by the Court in its detailed opinion entered on September 5, 2000 (# 159), and they are still without supporting evidence or even specific factual allegations. Furthermore on November 21, 2000 Judge Stacy granted Plaintiff leave to depose Hamshaw and, if he could subpoena Doyle, Doyle. Instrument # 202. Even after Hamshaw's deposition, the transcript of that deposition attached to Saudi's motion to resume that deposition (which was denied by Magistrate Judge Stacy on December 20, 2000, # 231) fails to reveal any contacts nationwide or in Texas that would support personal jurisdiction over Marine Atlantic Ltd. Saudi still[7] has not shown any basis for concluding that Doyle and Hamshaw were authorized agents for service nor that their activities, if any, on behalf of Marine

---

6. The Court agrees that by its express terms Rule 4(k)(2), providing for nationwide contacts where there is no personal jurisdiction over a foreign defendant in any state, require "serving a summons or filing a waiver of service" to establish jurisdiction.

7. Docket call is set in this action on February 9, 2000, with trial to follow during the next two weeks.

Atlantic Ltd. in the United States were sufficient to impose personal jurisdiction on Marine Atlantic Ltd.

Thus because of the extensive time already allowed to Plaintiff and his failure to discover and prove any contacts of Marine Atlantic Ltd. with Texas or the United States, and given the long-past discovery deadline of December 1, 2000, the Court

ORDERS that Marine Atlantic Ltd.'s motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice.