Phillips Exeter v. Howard Phillips     CV-98-277-B    01/11/99

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Phillips Exeter Academy**

    v.                                   Civil No. 98-277-B

**Howard Phillips Fund, Inc.**

MEMORANDUM AND ORDER

Phillips Exeter Academy filed this action in New Hampshire Federal District Court claiming, among other things, that defendants, The Howard Phillips Fund, Inc. and Dr. Phillips, Inc., breached contractual and fiduciary duties they owed to Exeter.  Defendants have moved to dismiss the action for lack of personal jurisdiction.  For the reasons noted below, I grant defendants' motion to dismiss.

I.    BACKGROUND

Howard Phillips, an Exeter alumnus, died in Florida in 1979. Phillips was domiciled within the state when his will was drafted

and probated there.  Exeter's claims arise from the defendants' obligations under the will.

When Phillips died, he held a power of appointment over 100% of the capital stock of Dr. Phillips, Inc. ("the Company"), a Florida corporation engaged in the business of developing and leasing commercial and industrial properties.  Phillips bequeathed his stock in the Company to one of three private charitable foundations.  Phillips' will specified that whichever foundation accepted the stock must pay Exeter: (1) five percent of the Company's annual income over a 20-year period; (2) five percent of the proceeds from any sales of the Company's stock during this period; and (3) five percent of the foundation's own income during the twenty-year period.

One of the foundations, then known as the Della Phllips Foundation, accepted Phillips' stock in the Company and agreed to abide by the conditions governing his bequest.  The Internal Revenue Code, however, imposes substantial tax penalties on private foundations that hold more than 20 percent of the stock in a business corporation for more than five years.  To avoid these penalties while retaining control over the stock, the Della

Phillips Foundation converted itself into a "support organization," which is exempt from these tax penalties. The Fund also changed its name to the Howard Phillips Fund, Inc. ("the Fund"). The Fund is organized as a Florida not-for-profit corporation.

Pursuant to a condition in Phillips' will, Exeter has been represented on the board of directors of the Fund since 1983 by John Emery, an Exeter alumnus. Emery is an attorney who lives and works in New York. Shortly after Emery's appointment, H.E. Johnson, president of both the Fund and the Company, corresponded with Emery by mail in an attempt to settle the Fund's future fiduciary obligation to Exeter with a one-time lump-sum payment. This correspondence was directed to Emery's office in New York. Other settlement correspondence was directed to Exeter's principal, Steven Kurtz, at his New Hampshire office. Emery and Kurtz rejected these offers as being inconsistent with the provisions of the will.

From 1985 to 1992, the Fund paid Exeter five percent of the Company's annual dividends. Thereafter, in November 1992, James Hinson, who succeeded Johnson as president of both the Fund and the Company, visited Exeter in November 1992 as an agent of the Fund to again propose a settlement of Exeter's remaining

interests under the will. The Fund mailed a further settlement proposal to Exeter in August 1993, at which time Exeter rejected the proposal. The Fund continued to make payments to Exeter through 1997 from annual distributions of the Company's dividend payments to the Fund.

The Company reorganized in 1997. A new not-for-profit corporation was formed under the laws of Delaware and the Company then merged into the new Delaware corporation, with the new corporation maintaining the Company's name of Dr. Phillips, Inc. As part of this reorganization, the Fund exchanged its stock in the Company for a membership interest in the newly reorganized company. Exeter was notified of the reorganization by mail in May 1997. After the reorganization, the Company continued to maintain its principal place of business in Florida.

During the relevant time period, defendants have neither maintained an office in New Hampshire nor transacted business here. Neither defendant has owned or leased any real property or personal property in New Hampshire, nor do they hold any bank accounts, securities, or other assets in the state. Defendants do not advertise or solicit business in New Hampshire. Further, except for the contacts discussed above, no officer, agent, representative, or employee of either the Fund or the Company

transacted any business in the state.

## II. __DISCUSSION__

Exeter alleges that the Fund has breached the contractual and fiduciary duties it owes Exeter by:  (1) paying to Exeter five percent of the annual dividends declared by the Company, rather than five percent of the Company's total annual income; (2) refusing to sell the Company's stock within five years of Howard Phillips' death; and (3) not paying Exeter five percent of the value of the Company's stock when the Company converted to a not-for-profit Delaware corporation in 1997.  Exeter also alleges that the Company was aware of and participated in these breaches of fiduciary duty. Defendants respond by arguing that this Court does not have personal jurisdiction over either the Company or the Fund.

### A. __Standard of Review__

When personal jurisdiction over a defendant is contested, the plaintiff bears the burden of showing that such jurisdiction exists.  See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  To carry its burden of proof when there has been no evidentiary hearing, a plaintiff must make a *prima facie* showing by submitting evidence that, if credited, is enough to support

findings of all facts essential to personal jurisdiction. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). A plaintiff resisting a motion to dismiss for lack of personal jurisdiction "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts," and the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" in making its ruling as a matter of law. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-47 (1st Cir. 1995); United Elec. Workers v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993). Disputed allegations of jurisdictional fact are construed in the light most favorable to the plaintiff.[1] See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

## B. Application

A court may assert personal jurisdiction over a non-resident defendant in a diversity of citizenship case only if the plaintiff establishes both that: (1) the forum state's long-arm statute confers jurisdiction over the defendant; and (2) the

---

[1] An evidentiary hearing is necessary only if the court determines that it would be unfair to the defendant to resolve the issue without requiring more of the plaintiff than a *prima facie* showing of jurisdiction. See Foster-Miller, 46 F.3d at 145-46. Here, fairness does not require an evidentiary hearing. Therefore, I apply the *prima facie* standard.

defendant has sufficient "minimum contacts" with the forum state to ensure that the court's exercise of jurisdiction comports with the requirements of constitutional due process.  See Sawtelle, 70 F.3d at 1387; Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7, 8 (1st Cir. 1986).  Because I conclude that defendants have not had sufficient contacts with the state of New Hampshire to satisfy due process requirements, I need not consider whether New Hampshire's long-arm statute confers jurisdiction over the defendants.

The Fourteenth Amendment's Due Process Clause limits a state's power to assert personal jurisdiction over non-resident defendants.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)).  For the court to properly assert personal jurisdiction over such a defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Id. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  To satisfy this minimum contacts requirement, the defendant's conduct must bear such a "substantial connection with the forum [state]" that the defendant "should reasonably anticipate being

haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (internal quotations omitted).

"The extent of the required jurisdictional showing by a plaintiff depends upon whether the litigant is asserting jurisdiction over a defendant under a theory of 'general' or 'specific' jurisdiction." Sawtelle, 70 F.3d at 1387 n.3. General jurisdiction enables the court to hear cases both related and unrelated to the defendant's contacts with the forum state, but requires the plaintiff to show that the defendant has maintained "substantial" or "continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St., 960 F.2d at 1080, 1088 (1st Cir. 1992). Specific jurisdiction enables the court to hear only cases arising out of the defendant's contacts with the forum state. See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) ("Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities[.]"); see also Helicopteros, 466 U.S. at 414-16; United Elec. Workers, 960 F.2d at 1089.

Exeter does not state whether it is asserting general or specific jurisdiction. Because I find that Exeter has failed to

identify sufficient jurisdictional facts establishing contacts with the forum state of a "substantial" or "continuous and systematic" nature to bring defendants before this court under a theory of general jurisdiction, I look to see if plaintiff's stated facts are sufficient to support a showing of specific jurisdiction.  See United Elec. Workers, 960 F.2d at 1088.

The First Circuit applies a tripartite test to determine whether a court's exercise of specific personal jurisdiction over a defendant survives constitutional scrutiny:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's in-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Id. at 1089.  I focus my analysis on the relatedness component of this test.

The relatedness component of the specific jurisdiction test ensures that a defendant with only limited contacts with a forum state will not be subject to suit in the state's courts without "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign . . . ."

-9-

Burger King, 471 U.S. at 472 (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in the judgment). The relatedness requirement serves this purpose by requiring the existence of a nexus between a defendant's contacts with the forum and the plaintiff's cause of action. See Ticketmaster, 26 F.3d at 206-07.

The First Circuit has used slightly different language to describe the relatedness requirement depending upon whether the plaintiff's claims sound in contract or tort. With respect to contract claims, the court must determine whether the defendant's forum state activities were "instrumental in the formation of the contract."[2] Massachusetts School of Law, 142 F.3d at 35 (quoting Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983). With respect to tort claims, the defendant's forum state contacts ordinarily must be both a "cause in fact" (injury would not have occurred but for the defendant's forum state activities) and a legal cause (the defendant's forum state activities were a proximate cause of the plaintiff's injury). See Massachusetts School of Law, 142 F.3d at 35. One circumstance where the court

_____

[2] Although the First Circuit has not expressly so held, I assume for purposes of analysis that the relatedness requirement in contract cases also can be satisfied if the defendant's forum state contacts were instrumental in the breach of a contract formed in another jurisdiction.

-10-

will not require proof of legal causation is if a defendant has "directly target[ed] residents [of the forum state] in an on-going effort to further a business relationship." <u>Nowak v. Tak How Investments, Ltd.</u>, 94 F.3d 708, 715 (1st Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1333 (1997). In such circumstances, evidence that the defendant's activities were a cause in fact of the plaintiff's injuries may be sufficient. <u>See</u> <u>id.</u> I apply these standards in determining whether defendants' forum state activities satisfy the relatedness component of the specific jurisdiction test.

Exeter alleges in essence that it is the third party beneficiary to a contract between Phillips and the Fund that was formed when the Fund accepted Phillips' bequest of the Company's stock. The Fund allegedly violated this contract first by failing to fulfill its obligation to pay Exeter five percent of the Company's income and later by failing to pay it five percent of the value of the Company's stock when the Company was converted from a business corporation into a not-for-profit corporation. Accepting Exeter's properly supported allegations as true, the contract on which its claim is based was formed in Florida when the Fund agreed to accept the conditions Phillips imposed on his bequest of the Company's stock. Further, the

-11-

conduct giving rise to Exeter's breach of contract claim - the Fund's alleged failure to pay Exeter five percent of the Company's income and five percent of the value of the Company's stock - also occurred in Florida where both the Fund and the Company are based. The only New Hampshire contacts Exeter has cited to support its claims are that funds were mailed to Exeter in the state, and that some settlement discussions occurred here. These contacts are not sufficiently tied to Exeter's cause of action to support its personal jurisdiction claim. See Massachusetts School of Law, 142 F.3d at 35 (in forum effects of extra-forum activities will not satisfy relatedness request).

Exeter's tort claims fare no better. Its primary claim is that the Fund breached the fiduciary duty that it owed Exeter when it failed to pay it five percent of the Company's income and five percent of the Company's stock. Exeter similarly alleges that the Company also is liable because it knowingly retained money that the Fund owed to Exeter. Exeter cannot credibly claim, however, either that the delivery of inadequate checks to Exeter in New Hampshire or that the initiation of settlement efforts with Exeter in New Hampshire were a proximate cause of Exeter's injuries. Nor is this a case where defendants can be said to have targeted Exeter in an on-going effort to further a

relationship with the school.  To the contrary, most of defendants' forum state contacts with Exeter were intended to terminate rather than promote their relationships with Exeter. Accordingly, Exeter has not demonstrated that a sufficient nexus exists between the defendants' forum state activities and its causes of action to satisfy the relatedness requirement of the specific personal jurisdiction test.

## III.  CONCLUSION

For the reasons discussed above, I hold that this Court cannot exercise personal jurisdiction over defendants as Exeter has not shown that defendants' forum-based activities satisfy due process requirements.  Therefore, I grant defendants' motion to dismiss for lack of personal jurisdiction (document no. 11). Defendants' motion to dismiss or transfer for improper venue (document no. 12) is dismissed as moot.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge

January   , 1999
cc:  Harvey Wolkoff, Esq.
     Jack B. Middleton, Esq.
     Richard Couser, Esq.
     Gregory Presnell, Esq.