**AMERICAN MEDICAL SYSTEMS, INC. and Laserscope, Inc., Plaintiffs**

v.

**BIOLITEC, INC., et al., Defendants.**

**C.A. No. 08–30061–MAP.**

United States District Court,
D. Massachusetts.

March 26, 2009.

---

James F. Dedonato, Mark D. Giarratana, Eric E. Grondahl, Richard J. Twilley, McCarter & English, LLP, Francis H. Morrison, III, Axinn Veltrop & Harkrider, Hartford, CT, David M. Ianelli, McCarter & English, LLP, Boston, MA, James P. Doyle, Axinn, Veltrop & Harkrider LLP, New York, NY, for Defendants.

Leland G. Hansen, Edward A. Mas, II, Scott P. McBride, Jonathan M. Rushman, Ronald H. Spuhler, McAndrews Held & Malloy, Ltd., Chicago, IL, Ernest V. Linek, Banner & Witcoff, Ltd., Boston, MA, for Plaintiffs.

*MEMORANDUM AND ORDER RE-GARDING DEFENDANT BIOLITEC AG'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT* (Dkt. No. 39)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiffs American Medical Systems, Inc. and Laserscope, Inc. brought suit against Defendants Biolitec, Inc., Biolitec

AG, CeramOptec Industries, Inc., CeramOptec GmbH, AndaOptec, Ltd., and ForTec Medical Corporation on March 21, 2008, charging patent infringement, false advertising, violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11, violation of Mass. Gen. Laws ch. 266, § 91, and unfair competition. Defendant Biolitec AG has filed a Motion to Dismiss or, Alternatively, for Partial Summary Judgment. Dkt. No. 39. For the reasons stated below, Defendant's motion to dismiss will be allowed.

## II. BACKGROUND

On June 14, 2007, prior to filing this complaint, Plaintiffs filed suit against Biolitec, Inc., charging it with infringement of U.S. Pat. No. 6,986,764 ("the '764 patent"). C.A. No. 07–cv–30109–MAP. This patent describes a device and method for prostate tissue vaporization used to treat Benign Prostate Hyperplasia. On March 21, 2008, this court denied Plaintiffs' motion to amend their complaint to include new parties. *Id.*, Dkt. No. 29. Later that day, Plaintiffs filed the present suit against a wider set of Defendants, asserting claims they had failed to incorporate into their original suit. Dkt. No. 1.

The complaint in this suit contains six counts. Count I charges all Defendants with manufacturing, using, selling, offering for sale, and/or importing into the United States products that infringe on the '764 patent, in particularly the Evolve laser system, in violation of 35 U.S.C. § 271 [1], Count II alleges similar conduct by Defendants infringing upon U.S. Pat. No. 5,428,-699 ("the '699 patent"), Count III charges Defendants Biolitec, Inc., Biolitec AG, and ForTec Medical Corporation with false ad-

vertising in connection with promotional materials discussing their Evolve system and Plaintiff's Green Light laser systems in violation of the Lanham Act, 15 U.S.C. § 1125(a), Count IV alleges that these three Defendants engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11, Count V alleges that Defendants' advertising violates Mass. Gen. Laws ch. 266, § 91, and Count VI asserts a claim for unfair competition under state common law against Biolitec, Inc., Biolitec AG, and ForTec Medical Corporation.

Defendants are a set of affiliated companies. The moving party, Biolitec AG, is a German corporation with several subsidiaries, including Defendants Biolitec, Inc., CeramOptec Industries, Inc., CeramOptec GmbH, and AndaOptec, Ltd. Biolitec AG has headquarters in Germany; the subsidiary corporations are headquartered in various locations around the United States and the world. Compl. at ¶¶ 1–8. Of particular significance here is Biolitec, Inc., which is headquartered in Massachusetts.

Plaintiffs attempted to serve Biolitec AG with the complaint at its German headquarters on June 2, 2008. As discussed below, Plaintiffs attempted service pursuant to the applicable multilateral treaty and through proper foreign authorities. However, this attempt at service lacked certain documentation, specifically a service of process request form as required by the treaty.

To justify the court's exercise of personal jurisdiction over Biolitec AG, Plaintiffs point to e-mails between Heinrich Kudla and Stefan Spaniol, employees of CeramOptec GmbH, and Wolfgang Neuberger,

---

1. On March 20, 2009, the court entered judgment for Defendant Biolitec, Inc. in the parallel litigation. C.A. 07–cv–30109–MAP, Dkt. No. 99. In its order allowing summary judgment in that case, the court held that Defen-

dant's Evolve laser system did not infringe the '764 patent directly or by equivalents. *Id.*, Dkt. No. 98. It remains to be seen what effect that ruling will have on this case.

President and CEO of both Biolitec AG and Biolitec, Inc. regarding the Evolve laser system. These communications resulted in Kudla shipping approximately five laser consoles and component parts to Biolitec, Inc. in Massachusetts. Dkt. No. 46, Ex. 1 at 3–4. In addition, Plaintiffs allege that Biolitec AG designed and promoted the Evolve system. Dkt. No. 46, Ex. 1 at 3–4

Further, the complaint alleges that misleading statements regarding Plaintiffs' product appeared on Biolitec, Inc.'s and ForTec Medical Corporation's websites. Compl. at ¶¶ 37–39. Finally, according to Plaintiffs, Neuberger traveled regularly to the United States both in his capacity as President of Biolitec AG and Biolitec, Inc. Dkt. No. 46, Ex. 1 at 73–75.

### III. *DISCUSSION*

Defendant Biolitec AG moves for dismissal on three grounds: (1) lack of personal jurisdiction; (2) inadequate service; and (3) violation of the notice pleading requirements of Fed.R.Civ.P. 8(a). It moves, alternatively, for summary judgment on some counts of the complaint.

#### A. *Personal Jurisdiction*

■■■ To establish personal jurisdiction over Defendant, Plaintiffs must make a *prima facie* showing of personal jurisdiction. In assessing the sufficiency of this showing, the court will accept Plaintiffs' proffers of evidence as true where supported by specific facts as set forth in the record. *See United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir.1993) ("*United Elec. II*"). Personal jurisdiction is established by demonstrating that: (1) the state's long-arm statute authorizes jurisdiction; and (2) general due process requirements are met. *Id.*

■ In Massachusetts, the long-arm statute has been interpreted to be coextensive with the constitutional limits of the Due Process Clause and thus it is appropriate for the court to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir.2002). The constitutional analysis looks, in essence, to whether Defendant has "sufficient minimum contacts with the state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir.2007) (citation omitted).

The complaint asserts three possible bases for the exercise of personal jurisdiction over Defendant: (1) it is the parent of several other Defendants, including a Massachusetts corporation; (2) it infringed Plaintiffs' patents along with other Defendants; and (3) it conspired with its subsidiaries and Defendant ForTec Medical Corporation to promulgate misleading advertisements. After oral argument on September 24, 2008, the court ordered the parties to submit supplemental briefs on the "stream of commerce" theory as an additional basis for the exercise of personal jurisdiction over Biolitec AG.

Taken together, Plaintiffs present two theories of personal jurisdiction, one based solely upon Biolitec AG's relationship with Biolitec, Inc. and another based upon Biolitec AG's alleged contacts with the forum.

#### I. *Parent–Subsidiary Liability*

■ Plaintiffs ask the court to pierce the corporate veil and disregard the formal distinction between Biolitec AG and Biolitec, Inc. to establish a basis to exercise personal jurisdiction over Biolitec AG. In the First Circuit, "litigants who insist that the corporate veil be brushed aside must first prove three things: lack of corporate

independence, fraudulent intent, and manifest injustice." *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1093 (1st Cir.1992) ("*United Elec. I* "). The test is conjunctive; the parent-subsidiary relationship is an improper basis for the exercise of personal jurisdiction in the absence of any one of the elements.

■ Plaintiffs are unable to make a *prima facie* showing that Biolitec AG established Biolitec, Inc. with some fraudulent intent. *United Elec. I* requires some evidence that a corporate parent established its subsidiary to evade statutory responsibilities, acted in a fraudulent manner, or looted or undercapitalized its subsidiary. *Id.* At best Plaintiffs allege that Biolitec AG oversees and controls its subsidiaries and works with them to market products. Dkt. No. 79, Pltf's Supp. Opp. at 4. None of this evidence indicates that Biolitec AG and Biolitec, Inc. enjoyed anything other than the traditional parent-subsidiary relationship established for purpose of limiting the parent's liabilities and obligations.

Additionally, there is no apparent injustice if the court does not exercise personal jurisdiction over Biolitec AG since the remaining Defendants, who were actually involved in the allegedly infringing activities, do not dispute jurisdiction and remain in the case.

In sum, Plaintiffs have not made the requisite showing to pierce the corporate veil.

ii. *Biolitec AG's Contacts With Massachusetts*

■ In addition to basic parent-subsidiary liability, the court must analyze whether Biolitec AG's alleged cooperation and coordination with its subsidiaries constitutes sufficient minimum contacts with Massachusetts to support the exercise of jurisdiction. The Supreme Court has held that the existence of overlapping corporate officers does not necessarily establish the liability of a parent for its subsidiary's actions. *United States v. Bestfoods*, 524 U.S. 51, 68–9, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). Though that case arose in a statutory context distinct from this case, the Court enunciated a key, general corporate law principle:

'It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.' ... Since courts generally presume 'that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary.' ... it cannot be enough to establish liability here that dual officers and directors [were directly involved with the subsidiary's illegal actions].

*Id.* at 69–70, 118 S.Ct. 1876 (citations omitted); *see also Diamond Chem. Co. v. Atofina Chem., Inc.*, 268 F.Supp.2d 1, 9 (D.D.C.2003) (citing *Bestfoods* in analyzing personal jurisdiction over a corporate parent).

Plaintiffs contend that Biolitec AG has ample contacts with Massachusetts. Specifically, they point to: (1) internal e-mails indicating that Biolitec AG shipped five copies of the Evolve laser system to Biolitec, Inc. in Massachusetts, Dkt. No. 46, Ex. 1 at 3–4; (2) Biolitec AG's responsibility for the design of the Evolve system, *Id.* at 1, 3, 15, 17–25; (3) regular communications between Biolitec, Inc. employees and Biolitec AG regarding product brochures, Food and Drug Administration clearance, marketing, and sales strategies, *see generally id.*; and (4) regular travel by Neuberger from Germany to the United States, partly in connection with sales of the accused device. *Id.* at 73–75; Dkt. No. 46, McBride Decl. at ¶ 15.

The *Bestfoods* presumption places the burden on Plaintiffs to show that Neuberger, Kudla, and Spaniol were acting in their capacity as Biolitec AG officers rather than officers of Biolitec, Inc. when they took actions related to Plaintiffs' claims. *Bestfoods,* 524 U.S. at 70, 118 S.Ct. 1876. They have not met this burden.

The factual predicate underlying Plaintiffs' contentions is that Biolitec, Inc. employees were, in fact, acting as Biolitec AG employees when they communicated with Biolitec AG regarding the Evolve system. The record shows that Kudla, who was involved in shipping the components of the accused device to Biolitec, Inc., was in fact an employee of CeramOptec GmbH. This is another German company that does not contest personal jurisdiction. Dkt. No. 58, Neuberger Decl. at ¶ 4. Spaniol, another correspondent in most of the e-mail communications at issue, was most actively an employee of the same German firm, though he was also a member of the management of Biolitec AG. *Id.* at ¶ 3. Finally, though Neuberger was the President and CEO of both Biolitec AG and Biolitec, Inc., he was acting as the head of the latter while conducting the activities in question in this case. *Id.* at ¶ 2.

Plaintiffs contend that, in parallel litigation, Biolitec, Inc. identified Kudla as an individual with pertinent information about Biolitec AG. That disclosure alone, however, does not support a conclusion that Kudla was acting as an employee of Biolitec AG when he took actions concerning the Evolve laser system.

Moreover, the complaint's allegations that Biolitec AG manufactured or sold the Evolve system in Massachusetts are insufficient to support personal jurisdiction. The record shows that Biolitec AG and Biolitec, Inc. were separate corporate entities. Plaintiffs have not come forth with facts sufficiently rebutting the declaration of Kelly Moran, a principal of Biolitec, Inc., stating that the German firm does not bear responsibility for the design, manufacture, sale, or importation of the Evolve system. Dkt. No. 40–2, Moran Decl. at ¶¶ 9–10.

Finally, the complaint contains only the barest allegations of Biolitec AG's involvement with ForTec Medical Corporation's alleged false advertising. The record does not show that these statements appeared on websites or other media controlled by Biolitec AG. Plaintiffs have not produced adequate evidence of a conspiracy between Biolitec AG and ForTec Medical Corporation. Any involvement by the co-principals of Biolitec AG and Biolitec, Inc. occurred in their latter capacity as employees of Biolitec, Inc. That members of Biolitec AG's extended corporate family discussed these advertisements and used them does not support an inference that Biolitec AG was directly involved in the actionable conduct alleged by Plaintiffs.

Plaintiffs' inability to make even a colorable claim of personal jurisdiction over Biolitec AG warrants rejection of their request for jurisdictional discovery. *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.,* 116 F.3d 962, 964 (1st Cir.1997) (requiring a "colorable case" before jurisdictional discovery will be permitted).

### B. *Service of Process*

■ Service on foreign Defendants is governed by the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Service Convention"). Article 3 of the Convention requires that the serving party must "forward to the Central Authority of the State addressed a request conforming to the model annexed to the Convention.... The document to be served or a copy thereof shall be annexed

to the request. The request and the document shall both be furnished in duplicate." *Id.* at Art. 3.

Once a country's Central Authority, in this case in Germany, receives the request, Articles 4 and 5 require the Central Authority either to inform the applicant if the request is invalid or to arrange for service. *Id.* at Art. 4–5. The Central Authority must serve the portion of the request documentation containing a summary of the document to be served in addition to the actual documents to be served. Once service is completed, Article 6 of the Hague Service Convention requires the Central Authority to send the applicant a certificate indicating that the proper documents have been served and outlining the method, place, date, and recipient of service. If service failed, the Authority must indicate in the certificate the reasons for such failure. *Id.* at Art. 6.

Biolitec AG contends that service of process was inadequate because it never received the request form as required by the treaty. This argument is unavailing because, though Plaintiffs were required to provide the Central Authority with two copies of the service request, the plain language of the Convention, specifically Article 5, requires the Central Authority to give to the target party only the summary portion of the request. Biolitec AG did, indeed, receive this summary page. Dkt. No. 40, Ex. B at 6.

Even assuming that the Central Authority erred in its service of the request form, it certified to Plaintiffs that service had been completed. Dkt. No. 44. A number of courts have held that certification of service by the Central Authority, absent any evidence that the target party lacked actual notice of the proceedings or was otherwise prejudiced by deficiencies in service, constitutes *prima facie* evidence of sufficient service regardless of potential non-compliance with every jot and tittle of the Hague Service Convention. *See, e.g., Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1389–90 (8th Cir.1995). Though the First Circuit is notably strict in holding Plaintiffs to the dictates of Fed. R.Civ.P. 4 regarding domestic service of process, it has not ruled in a similar fashion with respect to the Hague Service Convention. *See Media Duplication Svcs., Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1235 (1st Cir.1991).

In this case, there is no evidence that Biolitec AG lacked actual notice of these proceedings. Its subsidiaries were being sued on similar allegations. There is no evidence that it was unduly prejudiced by any potential failure by Plaintiffs to comply with all technical requirements of the Hague Service Convention. Indeed, the record shows that the German Central Authority gave Biolitec AG the summary of Plaintiffs' service request and that Plaintiffs received a certification of service that did not note any problems with the adequacy of service of process.

In light of Plaintiffs' good faith efforts to serve Biolitec AG and their receipt of a certification of service from the German Central Authority, the court concludes that Biolitec AG was properly served in Germany. Even assuming some deficiency in service of process, Biolitec AG suffered no undue disadvantage in this litigation.

## C. *Notice Pleading*

Biolitec AG argues that the complaint did not satisfy the notice pleading requirements of Fed.R.Civ.P. 8(a). This issue, though extensively and ably briefed, is moot. On April 24, 2008, Defendant CeramOptec Industries, Inc. filed a separate motion to dismiss the charges against it on the same grounds. After oral argument on July 14, 2008, the court denied that

motion, holding that the complaint adequately placed Defendants on notice of Plaintiffs' allegations. Dkt. No. 52. The court's reasoning applies with equal force to Biolitec AG.

### D. *Summary Judgment*

Having found no personal jurisdiction over Biolitec AG, the court lacks authority to rule upon the merits of its motion for partial summary judgment. The court may not simply note the jurisdictional defect and proceed to the merits of a suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### IV. *CONCLUSION*

Plaintiffs have failed to make a *prima facie* showing of personal jurisdiction over Biolitec AG. In essence, the complaint rests upon wrongdoing by Biolitec, Inc. and other Defendants in selling and promoting the Evolve laser system. Plaintiffs cannot maintain personal jurisdiction over Biolitec AG on the basis of actions by some of its employees who were, in fact, acting in their capacity as employees of Biolitec, Inc. In addition, the record does not justify the court piercing the corporate veil since there is no showing that Biolitec AG created its subsidiaries for a fraudulent purpose. Finally, Plaintiffs have not adduced evidence of the requisite minimum, direct contacts between Biolitec AG and Massachusetts.

The court's ruling does not leave Plaintiffs bereft of possible relief. The other Defendants do not contest personal jurisdiction and remain in the case.

For the foregoing reasons, Defendant Biolitec AG's Motion to Dismiss (Dkt. No. 39) is hereby ALLOWED. Accordingly, the court lacks the authority to reach Defendant's motion for partial summary judgment on the merits. The remaining De-fendants are scheduled to appear for a *Markman* claim construction hearing on the '699 patent on April 14, 2009.

It is So Ordered.